THE STATE ex inf. JOHN T. BARKER, Attorney-General, v. MERCHANTS' EXCHANGE OF ST. LOUIS.

In Banc, December 21, 1916.

1.  **GRAIN WEIGHING: Necessity for Violation of Statute: Quo Warranto: Valid Statute.** In a *quo warranto,* brought by the Attorney-General against a corporation known as a grain exchange, wherein the information charges that the corporation has been guilty of weighing grain received into and discharged from public warehouses and elevators, and of issuing weight certificates, and has thereby usurped privileges not granted to it, but expressly for-

bidden by statute, to which respondent in its return sets up facts which show that it is violating both the spirit and letter of the statute, its reasons and imagined necessity for violating the statute are wholly immaterial, if the statute is a valid one. Seeming hardships are no excuse for a corporation to do things which the State had forbidden it to do.

2. **CONSTITUTIONAL LAW: Fundamental Rules on Question of Validity.** There is a legal presumption of the validity of a statute; if there is doubt as to its constitutionality, the doubt will be resolved in favor of its validity; the expediency or inexpediency of a statute is not for the courts to determine; the power of the Legislature to enact laws has no limitation except the express limitations enumerated in the Federal and State Constitutions; and the legislative power under the police powers of the State is very broad.

3. ———: **Police Powers: Undefined.** The police powers of the State fall within a practically undefined field. They are undefined because the field of the public health, peace, safety and welfare is a very broad one, and there are many angles from which to view it.

4. ———: ———: **Private Rights: Grain Inspection.** Statutes which invade private rights are invalid unless they can be sustained as a reasonable exercise of the police powers of the State. A grain inspection law which does not tend toward the general welfare is invalid.

5. ———: ———: **Grain Weighing: By State.** The statute (Sec. 63, Laws 1913, p. 354) which makes it "unlawful for any person, corporation or association other than a duly authorized and bonded State weigher to issue any weight certificate or to issue or sign any paper or ticket purporting to be the weight of any grain" received into or discharged from any public warehouse or elevator, and requiring expert grain inspectors to grade and weighmen to weigh such grain and to issue receipts or certificates certifying to both grade and weight, to be appointed by the State, was designed to provide a disinterested agency for the protection of farmers, warehousemen, millers and bankers, and to so hedge about the grading, weighing and selling of grain as to prevent all kinds of fraud, and tends to promote the public welfare, and is a valid and reasonable police regulation. [Distinguishing State ex inf. v. Goffee, 192 Mo. l. c. 679, 688, in which the statute there under review did not prohibit the giving of a weight certificate by persons other than State officials.]

6. **GRAIN WEIGHING: Certification: By Both State and Board of Trade.** The said statute cannot be so construed as to permit the weighing and certification of weights by both State weighmasters and the corporation constituting the grain exchange. The law does not prohibit the owner from weighing his grain before it is sent to or put in or after it is withdrawn from a public warehouse,

in order that he may have evidence to refute the prima-facie show-ing of the State's certificate of weight; but the statute excludes all other except State weighmasters from giving weight certificates, and it cannot be otherwise interpreted without thwarting its pur-pose.

7. ————: Interference With Interstate Commerce. The statute pro-viding for the inspection and weighing of grain at public ware-houses by State inspectors and weighmasters and forbidding all other persons and corporations to certify to the grade and weight of such grain, does not interfere in any material sense with inter-state commerce. It does not purport to regulate interstate com-merce, but is made applicable solely to citizens of and property in the State.

## Quo Warranto.

JUDGMENT OF OUSTER ENTERED.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for relator.

(1) Every act of the Legislature, duly passed, is pre-sumed to be valid and constitutional. The burden is upon him who attacks its constitutionality to clearly show that it is violative of some constitutional provision. Ex parte Loving, 178 Mo. 203; State v. Cantwell, 179 Mo. 280; State v. Aloe, 152 Mo. 477; Pike v. Thompson, 144 Mo. 322; State ex rel. v. Pike Co., 144 Mo. 280; Railroad v. Andrews, 174 U. S. 96; Atkins v. Kansas, 191 U. S. 223. (2) When there is doubt as to the constitutionality of an act, it will be resolved in favor of the validity of the act. If reasonable minds might differ as to the constitutional-ity of legislation, it will be upheld as constitutional by the courts. State v. Cantwell, 179 Mo. 280; Ex parte Loving, 178 Mo. 321; State v. Abel, 65 Mo. 357; County v. Gris-wold, 58 Mo. 192. (3) The expediency or inexpediency of an act is a question for the Legislature and not for the courts. The judiciary cannot inquire into motives and necessities which may have superinduced the passage of the act. Brown v. Cape Girardeau, 90 Mo. 383; County v. Griswold, 58 Mo. 192; State v. Hayes, 49 Mo. 604; Bennett v. Boggs, 1 Baldwin (U. S.), 74; Atkins v. Kan-sas, 191 U. S. 207; Munn v. Illinois, 94 U. S. 131. (4)

The power of the Legislature is unlimited except by express terms of the Constitution. And the Legislature of Missouri has all the powers that belonged to the English parliament, except where there is plain constitutional restraint upon it. Ex parte Berger, 193 Mo. 24; Ex parte Roberts, 166 Mo. 212; Cass County v. Jack, 49 Mo. 196; Munn v. Illinois, 94 U. S. 124. (5) The act does not contravene the Constitution of Missouri or of the United States relative to the taking of property without due process of law, nor is it an unwarranted interference with the right of contract. Munn v. Illinois, 94 U. S. 113; House v. Mayes, 219 U. S. 270, 227 Mo. 617; Davidson v. Sadler, 33 Tex. Civ. App. 600; Wills v. Ft. Smith, 70 Ark. 221. (6) The act does not attempt to regulate interstate commerce, and therefore does not contravene the interstate commerce clause of the Federal Constitution. Coal Co. v. Louisiana, 156 U. S. 590; State v. Coal Co., 41 La. Ann. 465; Turner v. Maryland, 107 U. S. 38; Rasmussen v. Idaho, 181 U. S. 198. (7) The law is a valid exercise of police power. It tends to protect the public and promote the general welfare in that it tends to prevent fraud and imposition in the weighing of grain at public warehouses and elsewhere. Coal Co. v. St. Louis, 130 Mo. 323; St. Charles v. Elsner, 155 Mo. 671; House v. Mayes, 227 Mo. 617, 219 U. S. 270; Lamar v. Weideman, 57 Mo. App. 507; Munn v. Illinois, 94 U. S. 113; Coal Co. v. Louisiana, 156 U. S. 599; Stokes v. Corporation, 14 Wend. (N. Y.) 87; Intendant v. Sorrell, 1 Jones Law (N. C.), 49; O'Malley v. Freeport, 96 Pa. St. 24; James v. Josslyn, 65 Me. 138; Whitfield v. Compress Co., 26 Tex. Civ. App. 238; Davis v. Anita, 73 Iowa, 325; State v. Tyson, 111 N. C. 687; Gaines v. Coats, 51 Miss. 335; Yates v. Milwaukee, 12 Wis. 673; 1 Blackstone's Com. 275; Dillon, Mun. Corp., secs. 390, 391; (8) In passing upon the constitutionality of a given act courts give great weight to history of contemporaneous legislation upon such questons, and the fact that such legislation has long stood upon the statute books unchallenged is strongly persuasive of its constitutionality. The law is a progressive science and adapts itself to changing conditions. The Legislature is the

representative body of the Government, and, as all governmental power emanates from the people, this representative body has the right to declare the public policy of the State. Miller v. Oregon, 208 U. S. 420; Patterson v. Bark Eudora, 190 U. S. 169; Coal Co. v. West Virginia, 17 L. R. A. 385; State v. Loomis, 115 Mo. 324; Holden v. Hardy, 169 U. S. 387; McLane v. Arkansas, 211 U. S. 539; Ex parte Loving, 178 Mo. 202.

*Percy Werner* for respondent.

(1) It may be conceded that every act of the Legislature, if duly passed, is presumed to be constitutional; also that the burden is on the one who attacks its constitutionality to show that it infringes upon some specific provision of the State or Federal Constitution. But, when it is shown that the act does infringe upon specific provisions of the Constitution, and it is sought to justify it on the ground that it comes within the police power of the State, then the burden is on the one so claiming, to show that the act is justified for the reason that it comes within some well-recognized ground upon which the legislative police power rests. 1 Tiedeman on State & Fed. Control, sec. 1, p. 5; Cooley, Const. Limit (7·Ed.), p. 561; State v. Loomis, 115 Mo. 314; Ritchie v. People, 155 Ill. 98; State v. Cantwell, 179 Mo. 263; Ex parte Berger, 193 Mo. 29. No doubt can exist that, in the absence of such statutory provisions as those of section 63, respondent's members would possess the right to have their grain weighed by any person, public or private, whom they might select. Whether there has been a proper exercise of the police power is a question for the courts. Lawton v. Steele, 152 U. S. 137; State v. Railroad, 242 Mo. 361-2; State v. Loomis, 115 Mo. 307; State v. Vandersluis, 42 Minn. 129, 131; also cases cited supra under this head. (2) Section 63 of the Act of 1913 (Laws 1913, p. 372) is invalid for the reason that its terms are repugnant to sections 4 and 30 of article 2 of the Missouri Constitution, and to section 1 of the 14th Amendment to the Federal Constitution. (a) It· arbitrarily classifies

those who, in any manner, deal in grain, and arbitrarily and without any just reason restricts their rights, privileges and liberty. State v. Loomis, 115 Mo. 314; State v. Julow, 129 Mo. 172; Door Co. v. Fuelle, 215 Mo. 1. c. 444; State ex rel. v. Kimmel, 256 Mo. 641; State v. Baskowitz, 250 Mo. 82; State ex rel. v. Railroad, 246 Mo. 512; State v. Miksicek, 225 Mo. 561; Lumber Co. v. Mo. Pac. Ry. Co., 216 Mo. 675; State ex rel. v. Ashbrook, 154 Mo. 394. (b) Section 63 is contrary to the policy of Missouri as shown in Sec. 8431 and in Sec. 8430, R. S. 1909. It deprives one dealing in grain of the very protection given by section 8431 to employees in a mine by having a check weighman. (c) Section 59 of the Grain Inspection Act makes the certificate of the official weigher prima-facie evidence of the correctness of the weighing. Yet, since section 63 takes away the very means by which a buyer or a seller would be able to overcome the prima-facie case made by the official certificate, that certificate becomes conclusive evidence, and no other "basis of settlement" is open to either buyer or seller. To give the official certificate the force of conclusive evidence would be unconstitutional. State ex inf. v. Goffee, 192 Mo. 680. (3) The requirements, prohibition and penalties of section 63 cannot be sustained as constituting a proper and legitimate exercise of the State's police power. All the authorities cited under Point 2 do, to a greater or less extent, sustain this proposition. See, also the following: Bessette v. People, 193 Ill. 334; State v. Railroad, 242 Mo. 376; Fisher Co. v. Woods, 187 N. Y. 90; Grossman v. Caminez, 79 N. Y. App. Div. 15; State ex rel. v. Ashbrook, 154 Mo. 385; St. Louis v. Dreisoerner, 243 Mo. 224; Munn v. Illinois, 94 U. S. 124; Adair v. United States, 208 U. S. 172; Lawton v. Steele, 152 U. S. 137; Ex parte Jentzsch, 112 Cal. 468; 1 Tiedeman on State & Fed. Control, secs. 1, 3, 90; Cooley, Const. Lim. (7 Ed.), p. 559. The question whether any particular statute is a reasonable and necessary exercise of the State's police power is one to be determined by the courts. State v. Railroad, 242 Mo. 361; Lawton v. Steele, 152 U. S. 137; State v. Cantwell, 179 Mo. 263.

The public interest cannot be invoked as a justification for demands which pass the limits of reasonable protection. Railroad v. North Dakota, 236 U. S. 595; State v. Cantwell, 179 Mo. 263; State v. Vandersluis, 42 Minn. 129. And the police power ends where the public interests are not beneficially served. St. Louis v. Dreisoerner, 243 Mo. 224. (4) The question of the expediency or inexpediency of the statute, of its wisdom or necessity, is one which the court may properly consider in a case of the character of the one at bar. Section 63 deprives the persons affected by it of the exercise of natural rights. It can be justified only as a proper exercise of the State's police power. So that the question is whether the court can say that such an enactment is necessary, and is one which is demanded by the public health, comfort, safety or welfare. Ritchie v. People, 55 Ill. 98; State v. Cantwell, 179 Mo. 245. (5) The Missouri Grain Inspection Act imposes a burden on interstate commerce in violation of section 8 of article 1 of the Constitution of the United States. Smith v. Alabama, 124 U. S. 465. A shipment is none the less an interstate shipment because it is transhipped on the way, or is passed through elevators in St. Louis, Kansas City or St. Joseph for the purpose of transferring the grain from one car to another. Bailey v. Railroad, 184 Mo. App. 457; Conkey v. Railroad, 183 S. W. 1111; Terminal Co. v. Interstate Com. Comm., 219 U. S. 527; Railroad Comm. v. Worthington, 225 U. S. 110; Railroad v. La. R. R. Comm., 183 Fed. 1005, 229 U. S. 336.

*Frank Hagerman* for the Kansas City Board of Trade.

(1) The act should not be construed as broadly as contended, but the general language should be restricted within its spirit and to the power of the Legislature. Such is the clear result of the previous cases here (State ex rel. v. Smith, 114 Mo. 180; State ex inf. v. Goffee, 192 Mo. 670; Merchants' Exchange v. Knott, 212 Mo. 616) and in Kansas (State ex rel. Dawson v. Railroad, 87 Kan. 348). These cases accord with the general rule that crim-

inal provisions are to be strictly construed and the biblical maxim that the letter killeth while the spirit maketh alive. (2) There is no power in the State to prevent one from weighing his own grain or hiring someone else so to do. (a) It has been here (Merchants Exchange v. Knott, 212 Mo. 635) and elsewhere (People v. Harper, 91 Ill. 367) held that the power of the State itself to inspect or weigh and charge therefor rests not on any right to revenue, but can only be exercised because it is one ''solely for the protection of producers, shippers and receivers of grain and produce.'' When, therefore, the State in the exercise of that power weighs and certifies, there is no pretense of protection to those named in saying that neither of them can weigh for himself, or that both cannot contract on the basis of other or additional weights and certificates. It would really be to the detriment instead of the protection of the owner to say he could not, in addition to the State's weights, take those of his own. Otherwise he would be deprived of the right to test the accuracy of the State weights, and they would practically become conclusive instead of prima-facie as the statute commands. That they cannot legislatively be made conclusive was decided in State ex inf. v. Goffee, 192 Mo. 680. (b) Regardless of these thoughts, it is enough to say that the question presented was effectually disposed of in State ex inf. v. Goffee, 192 Mo. 679. (c) Regardless of that which has already been decided, a law, construed as relator construes this, would be invalid, because it would then impair the right to contract, which is fully protected by both State and Federal Constitutions. Sec. 4, art. 2, State Constitution; State v. Loomis, 115 Mo. 313; State v. Julow, 129 Mo. 172.

GRAVES, C. J.—This is an original proceeding in *quo warranto,* at the instance of the Attorney-General. The information, after formal allegations as to the incorporation of respondent, and as to certain laws of this State with reference to public inspectors and weighers of grain at all public elevators in cities having 75,000 inhabitants, charges:

"Relator further informs the court that said respond-
ent, the Merchants Exchange of St. Louis, has been for a
great many years and is now guilty of improper uses and
has unlawfully, illegally and wilfully misused and abused
its corporate franchise, rights and privileges under its
charter in this, to-wit: In that it is now unlawfully,
wrongfully and wilfully maintaining a department, known
as its weighing bureau, by and through which it is now
unlawfully and wrongfully, in violation of the statutes
of this State, weighing grain received into or discharged
from public warehouses and elevators in the city of St.
Louis, and making charges for said weighing, and issuing
weight certificates or tickets and making charges there-
for. That said acts of said respondent, Merchants Ex-
change, are usurpations of powers, rights and privileges
not conferred upon it by its corporate charter and in
excess thereof, and are in violation of the criminal stat-
utes of this State, all to the great and permanent injury
of the citizens of Missouri.

"Wherefore, relator, prosecuting in this behalf for the
State of Missouri, asks that this respondent be adjudged
guilty of usurping privileges and authorities not granted
by the State of Missouri in weighing the grain of the
citizens of Missouri and charging therefor, and issuing
weight certificates thereon, as aforesaid, and that such
acts on the part of respondents be declared illegal and
void and said respondent be forbidden to weigh such
grain as aforesaid and charge therefor, and from issuing
weight certificates thereon, and that said respondent be
fined in such sum as the court thinks will punish it and
cause others to refrain from doing similar acts, and for
all other and further orders and relief which to the court
seem meet, just and proper."

The return is exceedingly verbose, and such portions
thereof as may be required can best be noted in the opin-
ion, in connection with points raised. This return runs
the gamut from a general demurrer to the invocation of
the Fourteenth Amendment of the Federal Constitution.
Relator challenges the sufficiency of the return and moves
for judgment on the pleadings. The facts, in the return,

where facts may be in dispute as between the petition and return, must be taken as the facts in the case. This sufficiently outlines the case.

I. This case requires (1) a construction of our stat-

Necessity
for Viola-
tion of
Statute.

utes, and (2) a determination of their valid-ity. There are two vital questions met at the very threshold of the case. Section 63 of the Act of 1913, reads:

"It shall be unlawful for any person, *corporation or association* other than a duly authorized and bonded State weigher *to issue any weight certificate* or to *issue or sign any paper or ticket purporting to be the weight of any car, wagon, sack or other packages of grain weighed at any warehouse or elevator in this State where* duly appointed and qualified state weighers are stationed and in control of the scales under the provisions of this article, or to make any charge for such weighing, or purported weighing, or weight certificates, or tickets or purported weight certificates or tickets. And any person, corporation or officer, agent or servant of such corporation who shall do any of the acts declared by this section to be unlawful, *shall be deemed guilty of a misdemeanor*, and shall be punished by a fine of not less than five hundred dollars nor more than one thousand dollars, or shall be imprisoned in the county jail, or if in the city of St. Louis, the jail of said city, not less than six months nor more than twelve months, or by both such fine and imprisonment." [Laws 1913, p. 372.]

By the return it is admitted that the respondent has a weighing department, and that such department weighs the grain coming into public elevators and warehouses in the city of St. Louis, and further that it issues certificates of weight to the parties entitled thereto, and makes charges therefor.

With the plain letter of the law before us, and the admissions of respondent before us, it would be idle work to go into a detailed discussion of the question as to whether or not respondent is or is not violating this State statute. Its admission of record show that it is not

only violating the spirit, but also the letter of the statute. Its reasons for such violation are immaterial, if the statute is a valid enactment. Much of the very lengthy return is taken up with statements of reasons for the admitted violation of the law, but if the law is a valid one, the imagined necessity of its violation in the alleged interest of the grain trade at St. Louis, is wholly immaterial, and beyond the real issues.

Many laws seemingly work hardships upon persons and their business, but this is no excuse for the violation of the law. Nor is this seeming hardship an excuse for a corporation to do things, under a charter granted by the State, which things the State has forbidden by law.

The crux of this case lies in the validity or invalidity of our inspection laws. It does not lie in extraneous facts which might tend to show that the business of buying and selling grain in St. Louis would be benefited by a weighing and inspection thereof by respondent, rather than one by the State. To this vital question we proceed next.

II. We shall not discuss the fundamentals in statutory construction, when the validity of a statute is at stake. It goes without the saying that there is a legal presumption of validity; that if there is doubt as to

**Police Regulation: Grain Inspection: Public Welfare.** the constitutionality of the law the doubt shall be resolved in favor of the validity of the legislative act; that the expediency or inexpediency of the act is not for the courts; that in Missouri the power of the Legislature to enact laws has no limitation, except the express limitations in the State and Federal Constitutions; that the legislative power under the police powers of the State is very broad.

Of all the members of this court the writer has been most loth to extend the police powers of the State. [*Vide* concurring opinion in State v. Railroad, 242 Mo. 1. c. 376, and dissenting opinion in State ex rel. v. Vandiver, 222 Mo. 1. c. 255.] Yet in all that I may have written, the doctrine that private rights may be made subservient to

the public welfare is thoroughly recognized. The respondent urges that its private rights are invaded by these statutes, and if so, then the laws are invalid, unless they fall within the practically undefined field of the police powers of the State. I say undefined, because the field of the public peace, health, safety, and welfare, is a very broad one, and there are many angles from which to view the field. Laws of the character of the ones here involved, where sustained, have been sustained upon the theory of police regulations. In other words, because they were a proper exercise of the police power of the State. We shall not attempt to defend these laws otherwise.

To determine whether or not these grain inspection laws, including the weight and certificate provisions thereof, are a proper exercise of the police powers, we should have the provisions thereof clearly in mind, and then say whether or not such provisions tend toward the general welfare.

The act defines a public warehouseman and elevatorman, and public warehouses and elevators, and establishes the office of Warehouse Commissioner. It further provides for the grading and weighing of all grain into the public warehouses or elevators, and for the keeping of such grain in the grades so established.

Expert grain inspectors are to be employed to grade the grain, and weighmen employed to weigh the grain into the warehouses and elevators. If controversy arises either as to weights or grades a disinterested committee settles the same.

These officers are bonded for the faithful performance of duty. Warehouse receipts can only be given for grain actually weighed into the warehouse according to the grading and weighing of these public officers, and such receipts must be registered in the department of the Warehouse Commissioner. These receipts must be numbered consecutively and no two receipts from one warehouse shall be of the same number during the space of any one year. When grain is delivered upon a receipt, the receipt must be given over to the proper officer of

the State for cancellation. The issuance of receipts without the grain is made a crime. In fact, the act undertakes to so hedge in the handling of grain in these public warehouses and elevators, as to prevent all kinds of frauds. It so hedges the warehouse receipts that frauds upon banks and other persons loaning money are protected. The whole purport of the act is for such official supervision in the principal grain markets as will protect not only the buyers, but the sellers of grain. In other words, it establishes a disinterested agency between the buyer and seller both as to weights and grades of the grain. If a wheat grower of Missouri ships a car of wheat to St. Louis, he is not forced to take the grading and weighing of the defendant (an association of grain dealers and speculators), but he has the protection of the disinterested agency established by the State, an agency duly bonded for faithful performance of duty. If a Missouri miller desires to purchase a car of grain he has the same protection. If after grain is stored in an elevator, a Missouri banker desires to loan money upon the property, he has the assurance that it has been fairly graded and weighed, and the further assurance that not only is the grain there, and of the quality stated, but that only one elevator receipt is out for that particular grain. To say that these laws do not tend to the public welfare would be a travesty upon the law. Thirty-five states of the Union have laws similar to these laws, although they may effect different commodities. Many of them are gray from age. Such laws are usually directed to the chief commodities of the different states. In one it may be coal, whilst in others it is cotton, lumber, tobacco or some leading product. Section 6868, Revised Statutes 1909, reads:

"If any person other than the inspector shall inspect any hogshead of tobacco within the city of St. Louis, or if any person occupying any store or warehouse within the city of St. Louis shall suffer or permit any person other than the inspector to inspect any hogshead of tobacco upon the premises occupied by him, such person inspecting the tobacco, and such person or persons suf-

fering and permitting such illegal inspection, shall each be fined in the sum of one hundred dollars for every hogshead of tobacco so inspected to the use of the State, to be recovered by indictment.''

This statute, which is a part of the tobacco inspection laws of this State, has remained upon our books from 1845 to now. For over seventy years it, like a great oak of the forest, has stood unchallenged and unharmed. Similar statutes in other states date back to Colonial times. The purpose of all is the general welfare.

Nor are we scant in authority upholding such police regulations. In Coal Co. v. City of St. Louis, 130 Mo. l. c. 327, we had this ordinance under review:

''No person shall buy or sell any hay or stone-coal in this city until the same has been weighed by one of the legally authorized weighers, and a certificate of the weight thereof. given, as required in the provisions of this article; and any person violating this section shall be deemed guilty of a misdemeanor, and upon conviction thereof be fined not less than $10 for each offense.''

The ordinance was upheld by this court in an able opinion by BRACE, P. J. The ordinance, it was held, was within the charter powers, but it must be noted that such charter powers have their origin in the police powers of the State. In this case BRACE, P. J., said:

''By the charter of the city of St. Louis, the mayor and assembly have power by ordinance 'to license, tax, and regulate retailers,' 'to regulate and establish the standard of weights and measures to be used in the city of St. Louis, and to provide for the inspection of the same,' 'and for the inspection and weighing or measuring hay or stone-coal, charcoal, firewood, and all other kinds of fuel to be used in the city of St. Louis.' [Scheme and Charter, art. 3, sec. 26, pp. 2097 and 2098, 2 R. S. 1889.]

''The plaintiffs as retailers of coal by the wagon load in said city are amenable to all ordinances of the city within the scope of the powers thus granted. The purpose of the ordinance is plain. It is to protect the citizen from being imposed upon by false weights and measures. To accomplish this purpose, while dealers in coal

may weigh the coal which they sell on their own scales, they are not permitted to sell a wagon load of coal that has not been weighed by a weigher approved by the mayor and authorized by law to weigh the same. That it may be weighed by such a weigher and no other, and the citizen have the assurance of the fact, weighers' certificates of that fact are 'furnished' to such dealers for such weighers, and such weighers are required to 'furnish' one of such certificates for each load weighed by him. Surely nothing can be found in the purpose of this municipal law, nor in the means by which it is sought to be accomplished, that is without the express power granted by the charter to the city to regulate the weighing of coal in the city, and the fact that a few cents are charged by the city for furnishing each of the certificates surely cannot be beyond the power expressly given to tax and regulate 'retailers' of that commodity. Whether the mayor and assembly have selected the best means, by these ordinances, to accomplish the purpose is a matter with which we have nothing to do. The power exercised being within powers granted by the charter, the plaintiffs have no cause of action. The demurrer was properly sustained, and the judgment is affirmed.''

In City of St. Charles v. Elsner, 155 Mo. 671, we had up a very similar ordinance. It covers, however, coal, hay and corn, and it required both the weighing of such commodities, and an official certificate of weights. This ordinance we upheld.

In Ex parte House v. Mayes, 227 Mo. l. c. 636, GANTT, J., said:

''That the inspection and regulation of weights and measures are within the police power of the states, and laws passed by the Legislature for such inspection and regulation requiring dealers and traders to conform thereto, and for the appointment or election of officers or inspectors thereunder, are in the nature of police regulation and not repugnant to the Constitution of the United States or of this State, can no longer be doubted. [Pittsburg Coal Company v. Louisiana, 156 U. S. 590; 30 Am. & Eng. Ency. Law (2 Ed.), 451, and cases therein cited.]

Legislation along these lines is found in almost every country, the underlying purpose of which is to secure uniform weights and measures and to guard the people at large against defective and uncertain weights and measures and fraudulent practices connected therewith."

I thought the statute involved in the House case entrenched upon private contracts, and dissented with all the vigor I possessed, but only succeeded in getting two of my brothers to see the light as I saw it. The case went to the United States Supreme Court, and if I recollect aright my dissent had less effect there. Authorities from other jurisdictions are along the same lines. The purpose of State weighers is to get fair weights for all parties concerned. The purpose of certificates of weights being filed with the warehouse commissioner's department is clearly apparent from the outline of the law which we have given. Such requirement protects the public from more than one angle. We have no doubt that under our rulings, to some of which we have not agreed, these statutes are valid.

III. We are cited to language used by VALLIANT, J., in State ex inf. v. Goffee, 192 Mo. l. c. 679 and

**Former Decisions Distinguished.** 680. The language there used must be interpreted in accord with the facts of the case, and the law there under consideration. On page 679 that distinguished jurist did say:

"If all that the Attorney-General claims as the official rights of the State weighmasters be conceded, it is still doubtful if *quo warranto* is the proper remedy. The members of the Board of Trade have a right on their own account to employ men to weigh their grain for them and to accept their certificates of weight, even if it is the duty of the State weighmasters also to weigh the same grain and to give certificates of the weights. And if the law gives to the certificates of the State weighmaster a legal effect as evidence, still if the person buying or selling the grain should prefer to have it weighed by some other person and to base his business transaction in reference to it on the unofficial rather than the official cer-

tificates, he would have a right to do so. Such a course would not prevent the state weighmaster from performing his official duty or deprive him of his fees.''

But it must be recollected that the statutes there under discussion had no such provisions as we have in section 63 of the Act of 1913, supra. He did, however, in the concluding portion of his opinion (192 Mo. 1.,c. 688-689) get to the meat of the instant case. He there said:

''The amendatory Act of March 9, 1893, which we are now considering, does not purport to alter or amend any section of the law as it theretofore existed in reference to State grain inspection; it only adds other sections providing for weighing the grain that by the law theretofore existing was subject to inspection.

''It may be that the General Assembly, if it had been understood that grain inspection was by the law, as it then was, limited to public warehouse grain, would have so amended that law as to include other grain, but that is mere conjecture; we only know that, whether from misapprehension or disinclination, the General Assembly did not so amend this law, and we must take the law as we find it.

''We *have no doubt of the constitutional authority of the General Assembly in the exercise of the State's police power to throw around persons who ship their grain to market in this State the protection that official inspection and official weighing can give.* Without such protection the shipper is at the mercy of those who handle his grain in the great markets, and in the ordinary course of business he has no means, or at least no convenient or adequate means, of verifying the classification and weight of his grain. It is no infringement of the shipper's constitutional rights to tax his grain with reasonable charge for this official service, because whether a particular individual desires to avail himself of the service or not, such service is a wholesome control over the conduct of the business, and the State has the right to interfere for the protection of the public. And besides, there is nothing that could make the markets of this State more at-

tractive to shippers than a reputation for intelligent and honest inspection and weighing.

"But *whether the police power of the State should be exercised or not in such matters, and if exercised to what extent, are questions in the first instance for the General Assembly and not for the courts. In the law governing the case before us the General* Assembly has gone no further in the exercise of this police power than to provide for State inspection and State weighing of grain going into or out of public warehouses.

"We rest our judgment therefore in favor of the respondents, *not on the ground that the General Assembly could not, under the Constitution, pass a law requiring inspection and weighing* of grain in the great markets of this State other than such as goes into or out of a public warehouse, *but on the ground that the General Assembly has not done so.*"

The italics are ours. The law then under consideration did not specifically prohibit the giving of a weight certificate by persons other than state officials, as does the law now. The opinion, therefore, as to the rights of boards of trade under the then laws has but little weight in determining the questions in this case. Nor is there any thing in that opinion which thwarts a holding to the effect that the present inspection laws are valid. On the contrary the concluding portion of such opinion, quoted, supra, would indicate that such exercise of the police power would be valid.

We are also cited to Merchants Exchange v. Knott, 212 Mo. l. 'c. 635. A reading of that case, and of the case of People v. Harper, 91 Ill. l. c. 367, cited and quoted from therein, will show that the questions involved and discussed are wholly foreign to the ones here involved.

The questions here are, should the respondent be precluded from issuing weight certificates, or any paper or ticket purporting to be the weight of any car, wagon, sack, or other packages of grain received at the public warehouses and elevators in St. Louis, where our inspection laws apply? Or shall respondent be permitted to make any charges for weighing or issuing weight cer-

tificates or tickets? These are the things forbidden by section 63 of the Act of 1913 (Laws 1913, p. 372) and are the things the State seeks to prevent the respondent from doing. And, these are the things which respondent admits it has been doing. This statute forbidding persons, other than the bonded officers of this State, from doing these things, had in view the general welfare under repeated rulings of this court. Such statutes were intended for the protection of producers, shippers and receivers of grain and hay, as well as other parties interested therein as owners, pledgors, or pledgees. We are unable to say that the statute is an improper exercise of the police powers of the State. If so, the respondent should be prevented from issuing any weight certificates or any paper or ticket purporting to be the weight of any car, wagon, sack or other packages of grain weighed at any public warehouse or elevator in the city of St. Louis, and from charging for any weighing or weight receipt for any grain at such public warehouse or public elevator, where State weighers are stationed under the laws of this State.

IV. It is suggested by able counsel that the act should be so construed as to permit the weighing and certifying of weights both by the State and the respondent. The statute will not bear such a construction. It **Weighing** was clearly the legislative intent to make the **by Both** **State and** State the weighmaster, and to exclude others **Exchange.** from giving weight tickets or certificates. The very purpose of the law would be thwarted in the construction sought. Of course the law in no way prohibits owners of grain from weighing their grain before it is sent to or put in a public warehouse, to the end that they may know what they have, nor does it prohibit such owners from weighing it after it is withdrawn. So that the argument that no opporunity is afforded to have evidence to refute the prima-facie showing of the State's certificate of weight, is without foundation. By this we do not mean that such owners may force such previous or subsequent weighing upon scales provided for by the law for the use of the State authorities. The State au-

thorities are entitled to proceed with their work without hinderance, or interference in any respect.

V. Nor do we think these laws interfere in a material sense with interstate commerce. The police powers of the State has full recognition by the Federal government, and unless the laws passed in pursuance of such powers unduly interfere with the commerce clause of the Federal Constitution they have been upheld by the United States Supreme Court. [Pittsburg Coal Co. v. Louisiana, 156 U. S. 590; Sherlock v. Alling, 93 U. S. 99; Munn v. Illinois, 94 U. S. l. c. 135; Turner v. Maryland, 107 U. S. 38.]

These laws do not purport to regulate interstate commerce. They are made applicable solely to citizens of the State, and property in the State. In the Sherlock case, supra, the U. S. Supreme Court well said:

"And it may be said, generally, that the legislation of a State, not directed against commerce or any of its regulations but relating to the rights, duties, and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce, is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water, or engaged im commerce, foreign or interstate, or in any other pursuit."

What has been said by the courts with reference to elevation of grain in transit being a part of the transportation, and therefore the rates charged, under the control of the Interstate Commerce Commission, are foreign to the questions involved here. This contention is therefore ruled against the respondent.

We are therefore forced to conclude that the respondent should be adjudged guilty of the charges of usurpation in the information contained, i. e., (1) weighing the grain of the citizens of Missouri and charging therefor, and (2) issuing certificates of weight for grain deposited in the public warehouses and public elevators in the city of St. Louis. These things the law forbids and the respondent has no legal right to do. To this extent a judgment of ouster is entered.

All concur, except *Walker, J.,* not sitting.