STATE OF MISSOURI upon the information of ROY McKITTRICK, Attorney General, Relator, v. CAROLENE PRODUCTS COMPANY, a Corporation.
—144 S. W. (2d) 153.

Court en Banc, November 9, 1940.

1050

*Roy McKittrick,* Attorney General, *Max Wasserman, Robert L. Hyder* and *Tyre W. Burton,* Assistant Attorneys General, for relator; *J. R. Baker,* special counsel.

*Clark, Boggs, Peterson & Becker, Howard B. Lang, Jr.,* and *John C. Grover* for respondent; *Howard C. Knotts* of counsel.

*Langdon R. Jones* for Missouri Farmers Assn., *amicus curiae.*

*Stockard & Stockard* for Missouri Farm Bureau Federation, Missouri Guernsey Breeders Association, Independent Dairies, Inc., Missouri Holstein Association, and their affiliate associations, *amici curiae.*

*Waldo Edwards* for Missouri Illinois Food Distributors, Inc., St. Louis Retail Grocers Assn., Independent Super Markets of Greater St. Louis, Carder Grocery Company, Associated Grocers, Inc., St. Joseph, Associated Grocers, Inc., Kansas City, Associated Grocers, Inc., Springfield, Associated Grocers, Inc., Joplin, Howard Roberts, Walters Grocery, Richards Brothers, Mackie's Markets, Inc., Keifer Wholesale Grocer Company and Stanley Brooks Stores, *amici curiae;* *D. L. Dempsey* of counsel.

TIPTON, J.—This is an original proceeding in *quo warranto* brought by the Attorney General of this State to prohibit the respondent, a Michigan corporation, from doing business in this State, charging that it was violating Sections 12408, 12409, 12411, 12413 and 12415, Revised Statutes of Missouri, 1929. These statutes were referred to in the briefs and the oral arguments of this case as the "filled milk" statutes. To the respondent's return the relator filed a motion for judgment on the pleadings.

Respondent's products are sold in this State under the trade names of "New Vitamin A Carolene" and "New Vitamin A Milnut," and are compounds made from the following natural substances in their natural states: (1) skimmed milk, (2) pure, refined bland cocoanut oil, and (3) pure natural concentrates of vitamins A and D.

Respondent contends that in conducting its business in this State it does not violate the above named sections, and if it does so, these sections contravene both the Federal and State Constitutions.

Section 12408 reads: "It shall be unlawful for any person, firm or corporation, by himself or itself, his or its agent or servant, or as the servant or as agent of another, to manufacture, sell or exchange, or have in possession with the intent to sell or exchange, any milk, cream, emulsified cream, skim milk, buttermilk, condensed or evaporated milk, powdered milk, condensed skim milk, or any of the fluid derivatives thereof, or any of them, to which has been added any fat or oil other than milk fat, either under the name of said product or articles of the derivatives thereof, or under any fictitious or trade name whatsoever."

Section 12409 reads: "The term 'filled milk' means any milk, cream or skim milk, whether or not condensed, evaporated, concentrated, powdered, dried or desiccated, to which has been added, or which has been blended or compounded with, any fat or oil other than milk fat, so that the resulting product is in imitation or semblance of milk, cream or skim milk, whether or not condensed, evaporated, concentrated, powdered, dried or desiccated, which has been melted or refined by heating, boiling or mixing, *Provided* that the above definition shall not include any distinctive proprietary food compound, not readily mistaken in tests for milk or cream, or for evaporated, condensed or powdered milk or cream: *Provided, however,* that such compound is prepared and designed for feeding infants and young children and customarily used on the order of a physician; is packed in individual cans containing not more than sixteen and one-half ounces and bearing the label in bold type, that the contents are to be used only for said purposes; is shipped in interstate or foreign commerce exclusively to physicians, wholesale or retail druggists, orphan asylums, child welfare associations, hospitals and similar institutions and generally distributed by them."

Section 12410 defines "emulsified cream." Section 12411 prohibits the use of "emulsified cream" (not here involved) and contains this declaration: "It is hereby declared that filled milk, and emulsified cream as herein defined, are adulterated articles of food injurious to the public health and its sale constitutes a fraud upon the public." Section 12412 provides penalties for violation of Sections 12407 to 12411 inclusive. Section 12407 establishes standards for milk and is not challenged as invalid. It is not involved in this case.

Section 12413 is similar to Section 12408, except that it does not name emulsified cream. It was a part of a senate bill enacted at the same session (1923) as the house bill which includes Sections 12408 to 12412. The senate bill was approved April 2, 1923, while the house bill was approved three days later. What is now Section 12415 was the penalty clause of the senate bill. In both acts of

1923, violation was made a misdemeanor punishable by fine or jail imprisonment or both, but the extent of the permissible punishment differs. This difference in the punishment authorized will not need to be considered in this case.

In the case of Poole & Creber Market Co. v. Breshears, 343 Mo. 1133, 125 S. W. (2d) 23, the constitutionality of the above named sections was before us, that not their construction. In that case, the plaintiff who had been selling the respondent's products, which at that time did not contain vitamins A and D, sought to enjoin the enforcement of these sections because they were unconstitutional. We said (l. c. 25): "Upon final hearing the circuit court found for the defendants, holding the statute valid, and dismissed plaintiff's bill. Plaintiff appealed. *The question presented here is whether or not said statutory provisions are valid. If they are the judgment below was right.*" (Italics ours.) Thus, we see that the Poole & Creber case is no aid to us in construing the filled milk statutes of this State.

█ Standing alone and literally construed, Section 12408, supra, prohibits the sale of any milk, whole or skim milk to which has been added any fat or oil other than milk fat. Section 12409 defines filled milk to mean "any milk, cream or skim milk, . . . to which has been added, . . . any fat or oil other than milk fat, *so that the resulting product is in imitation or semblance of milk, cream or skim milk* . . . *Provided* that the above definition shall not include any distinctive proprietary food compound, not readily mistaken in tests for milk or cream, or for evaporated, condensed or powdered milk or cream: *Provided, however,* that such compound is prepared and designed for feeding infants and young children and customarily used on the order of a physician; is packed in individual cans containing not more than sixteen and one-half ounces and bearing the label in bold type, that the contents are to be used only for said purposes; is shipped in interstate or foreign commerce exclusively to physicians, wholesale or retail druggists, orphan asylums, child welfare associations, hospitals and similar institutions and generally distributed by them." (Italics ours.)

So, under Section 12409, supra, skim milk to which has been added fat or oil other than milk fat can be sold, provided the resulting product is not "in imitation or semblance of milk, cream or skim milk." Even milk to which fat or oil is added and which is in imitation or semblance of milk, cream or skim milk can be sold, provided it is a "distinctive proprietary food compound designed for feeding infants and young children" and customarily used on the order of a physician, packed in cans containing not more than sixteen and one-half ounces, and shipped in interstate or foreign commerce exclusively to physicians, druggists, orphan asylums, child welfare associations, etc. Section 12410 deals with emulsified cream which is not involved in this case. Section 12411 declares "that filled milk and emulsified

cream as herein defined, are adulterated articles of food injurious to the public health.'' Section 12412 is a penalty section.

We will undertake first to determine the intention of the Legislature in passing the house bill of 1923.

It is a cardinal rule of construction that every word, clause, sentence and section of an act must be given some meaning unless it is in conflict with the legislative intent. [State v. Wipke et al., 345 Mo. 283, 133 S. W. (2d) 354; State ex rel. Kansas City Power & Light Co. v. Smith, 342 Mo. 75, 111 S. W. (2d) 513; Holder v. Elms Hotel Co., 338 Mo. 857, 92 S. W. (2d) 620, 104 A. L. R. 339.] ''It is the duty of the court, in construing statutes which appear to be in conflict, to reconcile them, if possible, with the general legislative purpose.'' [Dysart v. City of St. Louis, 321 Mo. 514, ·11 S. W. (2d) 1045, l. c. 1050, 62 A. L. R. 762.] With these rules of construction in mind, we believe the apparent conflict between Section 12408, supra, and Section 12409 can be reconciled, and reading these two sections together we have come to the conclusion the Legislature sought to prohibit the sale, manufacture or exchange of milk, or skim milk blended with fat or oil other than milk fat when the resulting product is in imitation or semblance of milk.

To hold that there is irreconcilable conflict between these two sections (which we have just held to be to the contrary), we would be forced to reach the same conclusion under the rule announced in the case of State ex rel. Greene County v. Gideon, 273 Mo. 79, 199 S. W. 948, which holds that where there is irreconcilable conflict between two different parts of the same act, as a rule the last in order of position will control unless there is some special reason for holding to the contrary. Such reason does not exist in this case.

Now, in regard to the senate bill, Section 12413, we have already found that it is very similar to Section 12408, with the exception that it does not name emulsified cream. It is our duty to keep the legislative intent in mind, if it can be ascertained, and the whole act, or such portions thereof as are *pari materia* should be construed together. [Holder v. Elms Hotel Co., supra.]

''Where there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them the special will prevail over the general statute. Where the special statute is later, it will be regarded as an exception to, or qualification of, the prior general one; and where the general act is later, the special will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication.'' [Quoted with approval in the case of

State ex rel. Buchanan County v. Fulks, 296 Mo. 614, 247 S. W. 129, l. c. 132.]

Sections 12408 and 12413 are general statutes dealing with milk to which has been added fat or oil other than milk fat. Section 12409 deals with the same subject in a more minute and definite way, and being special it will prevail over Sections 12408 and 12413. Considering the statutes dealing with this subject as a whole, we conclude the intent of the Legislature was to prohibit the sale of filled milk, and that filled milk is only that milk to which has been added fat or oil other than milk fat ''so that the resulting product is in imitation or semblance of milk, cream or skim milk,'' and that if the product does not come within the statutory definition of filled milk it can be lawfully sold in this State.

This view is in harmony with the decision of the United States Supreme Court in the case of the United States v. Carolene Products Co., 304 U. S. 144, 58 Sup. Ct. 778, 82 L. Ed. 1234, wherein that court held that the Federal filled milk statutes (Chap. 262, 42 Stat. at L. 1486, 21 U. S. C. A., Sections 61-63) are inoperative unless the product is ''in imitation or semblance of milk, cream or skim milk, whether or not condensed.'' The Federal act is almost identical with Section 12409 of our act.

As previously stated, Section 12411 declares ''that filled milk, and emulsified cream as herein defined, are adulterated articles of food injurious to the public health and its sale constitutes a fraud upon the public.'' We held in the Poole & Creber case, supra, that this declaration was only prima facie evidence of that fact, and not conclusive.

Respondent contends that its products, New Vitamin A Carolene and New Vitamin A Milnut, do not come within the statutory denition of filled milk. In other words, its products are not ''in imitation or semblance of milk, cream or skim milk.''

Where the relator in a *quo warranto* proceeding challenges the sufficiency of respondent's return and moves for judgment on the pleadings, as was done in this case, the facts pleaded in the return must be taken as the facts in the case. [State ex rel. Barker v. Merchants' Exchange, 269 Mo. 346, 190 S. W. 903; State ex inf. Shartel v. Mo. Utilities Co., 331 Mo. 337, 53 S. W. (2d) 394, 89 A. L. R. 607.]

The facts as found in respondent's return are as follows: That New Vitamin A Carolene and New Vitamin A Milnut are identical products, sold under different trade names; that they are wholesome, nutritious, uninjurious, unadulterated and beneficial food products; that each of the ingredients is uniformly recognized as pure, wholesome food; that respondent's products are manufactured in a modern sanitary creamery of the Litchfield Creamery Company at Litchfield, Illinois; that the ingredients are compounded by a special process

and evaporated in the same manner as whole or skim milk is evaporated in the manner of evaporated milks; that by evaporation the solids of the mixture are concentrated two and one-quarter times solely from the loss of water and then the products are put in hermetically sealed cans holding fourteen and one-half ounces of respondent's products, which contain 2000 U. S. P. units of vitamin A and 400 U. S. P. units of vitamin D; that respondent's products are pure milk compounds containing approximately the following chemical constituents:

| | |
|---|---|
| Fats | 6.00 |
| Protein | 7.75 |
| Carbohydrates | 10.72 |
| Mineral Salts | 1.76 |
| Water | 73.88 |

The return also states that respondent's products comply in all respects with the Federal food and drug laws and with all Missouri laws relating to and prohibiting the adulteration and misbranding of food products, that respondent's products are plainly and properly labeled; and that on the label in large type are the words: "NOT TO BE SOLD FOR EVAPORATED MILK."

The return further states:

"That New Vitamin A Carolene and New Vitamin A Milnut is a unique food compound, manufactured and compounded from the following natural substances in their natural states: (1) skimmed milk, (2) pure, refined, bland cocoanut oil, and (3) pure, natural concentrates of vitamins A and D. That in the compounding of these natural products no other substance is added and nothing is done, designed to or which does make the resulting product an imitation or semblance of milk, cream or skimmed milk in any of their forms. That said products are not manufactured, compounded, sold or used as or in imitation or semblance of milk, cream or skimmed milk in any of their forms; but on the contrary, said products are compounded, as aforesaid for the sole purpose of creating a unique food compound, wholesome and nutritious, and superior to milk in any of its forms as a human food, and unanimously accepted as a wholesome, nutitious, growth-promoting food compound containing more than adequate uniform vitamin content; that said products are superior to milk or evaporated milk in uniformity and quantity of all vitamins.

"That in the compounding of said products the pure skimmed milk, the cocoanut oil and the vitamin concentrates are left undamaged and undisguised in their natural states, except for the evaporation of water therefrom. That the appearance, taste, flavor, color and other characteristics of the compound, are the appearance, taste, flavor and color of the natural products used in the manufacture thereof and do not result from any artificial treatment or addition of substances.

". . . That not only is there no intent to imitate or simulate milk, cream or skimmed milk, but on the contrary, all persons handling and dealing in said products, from the manufacturer to the retailer, carefully compound, sell and handle these products in hermetically sealed tins bearing labels which prominently and boldly state the nature of the compound and which prominently and boldly state that said product is a unique cooking compound and not to be sold as or for evaporated milk."

Under the facts found in respondent's return we have reached the conclusion that respondent's products sold in this State do not come within the prohibition of our filled milk statute, set out above.

From the facts set out in respondent's return, we find that respondent's products are wholesome, nutritious, uninjurious, unadulterated and beneficial food products. This was admitted to be true by relator during the oral argument of this case in this court.

Nor do we find from the return that the respondent's products are sold in imitation or semblance of milk, but on the contrary these products are a unique cooking compound and are not sold as or for evaporated milk.

Not only does the label on respondent's products plainly state that it is not to be sold for evaporated milk and that it is "especially prepared for coffee, baking and for other culinary purposes," but the return also states that respondent's dealers do not sell these products for evaporated milk. From the facts above set out we are unable to see how the buying public could be deceived into thinking that they were buying milk when purchasing respondent's products.

It therefore will be unnecessary to discuss the constitutional questions raised by respondent.

For the reasons above stated, ouster is denied, and the proceeding dismissed. All concur.