**STATE of Missouri, Respondent,**

v.

**Michael W. BEY, Appellant.**

**No. WD 30880.**

Missouri Court of Appeals, Western District.

May 5, 1980.

C. B. Fitzgerald, Warrensburg, for appellant.

John Ashcroft, Atty. Gen., Michael P. Donegan, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

Appellant Michael W. Bey was charged with the offense of burglary in the first degree, Section 560.040, RSMo 1969[1], was found guilty after trial by a jury and was thereafter sentenced to a term of imprisonment of twenty years as recommended by the jury. Instruction of the jury as to punishment was in accordance with Section 560.095, RSMo 1969, and informed the jury that the range of punishment for the offense was five to twenty years[2]. Bey appeals contending, (1) argument and instruction regarding punishment erroneously failed to employ reduced terms for sentence applicable to post-1978 offenses, (2) consultation with family and friends and substitution of counsel during trial were erroneously denied, and (3) effective review of trial error was frustrated by denial to appellant of a trial transcript for use in preparing after-trial motions.

Bey does not challenge the sufficiency of the evidence to support the jury verdict and a brief summary of that evidence will therefore suffice.

In the early morning hours of November 30, 1978, police officers were dispatched, in response to a report of an attempted rape in progress, to a residence in Warrensburg, Missouri, occupied as a dormitory by female students attending Central Missouri State University. Upon arrival, one officer en-

---

1. Burglary in the first degree is now defined by Section 569.160, RSMo 1978, effective January 1, 1979, a date subsequent to commission of the offense here. Definition of the offense under Section 569.160 includes that conduct charged of Bey and evidence adduced would have supported a conviction under either section.

2. The offense of burglary in the first degree is, by Section 569.160, RSMo 1978, now defined as a Class B felony. Section 558.011, RSMo 1978, provides the punishment for Class B felonies to be not less than five nor more than fifteen years.

tered the house from the rear and found Bey in the living room unclothed and attempting to open a window. A young woman, also unclothed, was nearby pleading for aid.

In response to the officer's command to surrender, Bey attempted to flee by running through the house and into the back yard but he was tackled by the officer and was subdued. The girl described an assault upon her by Bey, a stranger to her, after she confronted him when noise of his intrusion awakened her. Subsequent investigation revealed all of Bey's clothing located on the back porch of the residence and signs of forced entry through a screen door leading from the back porch into the house.

Bey first complains that the prosecutor was permitted, over objection, to inform the jury in his opening statement that a sentence of twenty years would be sought by the state upon conviction. He also takes exception to the state's verdict directing instruction which informed the jury that in the event a verdict of guilty were returned, they should assess punishment at a term of not less than five nor more than twenty years. The basis for this complaint of error is asserted to lie in Section 1.160, RSMo 1978 [3], which provides, in substance, that if penalty for any offense be reduced, the lesser punishment shall be imposed as to offenses committed previous to the date of change in the statutory provision.

The Criminal Code adopted by the Missouri Legislature during the first regular session of the Seventy-Ninth General Assembly substantially revised the statutory definition and designation of criminal offenses and the ranges of punishment upon conviction. The code was effective January 1, 1979, and its terms were expressly made applicable to offenses committed subsequent to that date, Section 556.031(1). The offense of burglary in the first degree was retained in the new code but, for classification and penalty provisions, it was designated a Class B felony thereby incorporating a range of punishment applicable to all Class B felonies—five years to fifteen years.

Such contrasts with the former penalty range of five years to twenty years for substantially the same offense.

Bey here argues that the penalty for burglary in the first degree was reduced under the criminal code effective January 1, 1979, some thirty days after the date of the offense for which he was charged and, by virtue of Section 1.160, he was entitled to the benefit of the reduction in penalty. If such be correct, then the trial court erred in not confining instruction and argument to the jury in his case to a maximum sentence of fifteen rather than twenty years.

Section 556.031(3), of the new criminal code, states that its provisions are to be of prospective application only. The content of the last referenced sub-section is recited as follows:

"The provisions of this code [The Criminal Code] do not apply to or govern the construction of and punishment for any offense committed prior to January 1, 1979, or the construction and application of any defense to a prosecution for such an offense. Such an offense must be construed and punished according to the provisions of law existing at the time of the commission thereof in the same manner as if this code had not been enacted, *the provisions of section 1.160, RSMo, notwithstanding.*" (Emphasis supplied.)

In those cases where, as here, the conduct proscribed is readily identified as a crime under statutes applicable before or after January 1, 1979, but a greater penalty may be assessed under the prior statute, resolution of the punishment question depends upon which statutory provision controls, Section 1.160 or Section 556.031(3).

◼ The primary rule in statutory construction is to ascertain and give effect to the legislative intent and to reconcile statutes which appear to be in conflict if it is possible to do so. *Flarsheim v. Twenty Five Thirty Two Broadway Corp.,* 432 S.W.2d 245, 251 (Mo.1968). Statutes relating to the same subject must be read to-

---

3. Citations unless otherwise noted are to RSMo 1978.

gether and, if possible, in harmony. *City of Raytown v. Danforth*, 560 S.W.2d 846, 848 (Mo. banc 1977). Where one statute deals with the subject generally and another deals with a part of the same subject in a more minute and definite way, repugnancy between them will be resolved in favor of the special statute over the general and where the special statute is later, it will be regarded as an exception to or qualification of the prior, general statute. *Laughlin v. Forgrave*, 432 S.W.2d 308, 313 (Mo. banc 1968), citing *State ex rel. McKittrick v. Carolene Products Co.*, 346 Mo. 1049, 144 S.W.2d 153, 156 (banc 1940).

■ Applying these construction rules to the present case, Section 1.160, a statute which has survived in substantially the same form for more than forty years, is both antecedent as to its enactment and general in its application when compared to Section 556.031(3). The latter deals with a part of the subject, punishment for offenses, in a "more minute and definite way" in that it directs applicability of penal, criminal laws in a limited time period, i. e., offenses committed and statutes in force before January 1, 1979. Apart from those situations, the numbers of which will gradually reduce to extinction with the mere passage of time, Section 1.160 survives and would, indeed, govern punishment were, for example, a range of punishment to be later reduced from that specified in the current criminal code. Section 556.031(3) must therefore be considered to be an exception to or a qualification of Section 1.160, in accordance with the authorities above cited.

The view here expressed is consistent with *State ex rel. Peach v. Bloom*, 576 S.W.2d 744 (Mo. banc 1979), where the court stated: "[w]e believe it is clear that the intent of the General Assembly in enacting Sec. 556.031 was to make the provisions of law existing prior to the new criminal code relating both as to punishment and to 'proceedings' applicable to all offenses committed prior to January 1, 1979." This same construction of the statute was subsequently followed in *State v. Thompson*, 588 S.W.2d 36 (Mo.App.1979), where the defendant sought an instruction under Section 562.076, RSMo 1979, on voluntary intoxication and in *Parrish v. Wyrick*, 589 S.W.2d 74 (Mo.App.1979), where release of a prisoner for "statutory good time" was noted to be controlled by prior law. These authorities require and we reaffirm the construction of Section 556.031, to restrict application of penalty provisions in the new criminal code to offenses committed on and after January 1, 1979, and to require assessment of punishment for offenses committed before that date in accordance with the statute then applicable. Such was appropriately done in this case and Bey's claim of error is without merit.

Bey next contends that he was denied counsel of his choice and was precluded by the court's action from conferring with his relatives. Some explication of the facts is required to illuminate Bey's contention.

Throughout the progress of this case, Bey was represented by appointed counsel, C. B. Fitzgerald, who first appeared at a preliminary hearing before the associate circuit judge and who was reappointed on January 2, 1979, at arraignment before the circuit judge. On the morning trial commenced, February 21, 1979, the court inquired of Bey if he was satisfied that Mr. Fitzgerald had competently and adequately represented him and Bey informed the court that he had. Trial began, a jury was selected and the state presented its case, initially completing the testimony of the victim who identified Bey as her assailant. After the noon recess and while the state was examining its third witness, counsel and Bey conferred with the court to relate Bey's request that he be permitted to discuss his situation with an uncle who was an attorney.

After an interlude of more than one hour during which Mr. Fitzgerald made inquiries to locate Bey's uncle, a process complicated by the fact that Bey was unable to recall the uncle's last name, the individual was contacted in Kansas City and Bey spoke with him by telephone. The result reported to the court was that the uncle, described as

being employed by the Department of Justice, could not immediately leave work but would be available in the evening. A request by Bey that the trial be recessed until the following day was denied, the trial resumed and was concluded upon receipt of the jury's verdict at approximately 5:30 p. m. that day.

The contention which Bey advances regarding denial of his request for a recess is limited in scope because the record reflects no intimation that Bey at any time expressed dissatisfaction with Mr. Fitzgerald's services as his counsel. In fact, Bey responded to the court's inquiry on three occasions that he had no complaint. Bey made no request that Mr. Fitzgerald be relieved and he sought no appointment of substitute counsel. All that emerges from the colloquies during the extended afternoon recess is Bey's desire to discuss the progress of the case with the uncle with no articulation of any specific objective nor any suggestion of what benefit Bey hoped to obtain from such a conference.

No issue is here made of right to counsel of a party's choice because Bey not only gave no indication that a conference with his uncle would lead to his substitution as defense counsel, but the uncle's position with the Department of Justice and his apparent lack of any foreknowledge of the case quite obviously precluded any realistic expectation of effective legal services for the defense from that source. Additionally, Bey had made no other effort during the period of some three months preceding his trial to engage an attorney or to contact family members, but had, according to Mr. Fitzgerald, resisted suggestions that he do so.

■ Review of the trial court's action in denying Bey's early afternoon request for an overnight recess must acknowledge the discretionary authority reposed in the trial court to control proceedings before it. A request for a recess, like a request for a continuance, is addressed to the sound discretion of the trial court and a very strong showing is required to induce a higher court to interfere. The action of the trial court will only be disturbed where that strong showing demonstrates a clear abuse of discretion. *State v. Thomas*, 433 S.W.2d 537, 539 (Mo.1968), citing *State v. Amerison*, 399 S.W.2d 53, 55 (Mo.1966).

■ We cannot say that denial of Bey's request for an extended recess was within those limited situations justifying appellate intervention. Here, the jurors, witnesses, counsel and the court were waiting to continue the trial and the object sought by Bey was ill defined and speculative. No demonstrable prejudice to Bey's cause resulted from denial of the overnight recess. The allegation of error is without merit.

■ As his final point, Bey complains that denial of his request for production of a trial transcript before expiration of the time to file his motion for new trial prejudiced the content of his motion and restricted consideration on appeal of trial errors. Thus, he suggests, he has been denied that aspect of due process implicit in the right to an appeal. Significantly, however, he points to no allegation of error omitted from his after-trial motion for want of the early transcript and he describes no aspect of the case upon which appellate review would now be focused had the transcript been furnished as requested.

This same contention was previously advanced and rejected by the court in *State v. Morton*, 444 S.W.2d 420 (Mo.1969), where the defendant also complained of inability to prepare a motion for new trial without a transcript to serve as a reference source. The observation may again be appropriately made that preparation of a transcript in the limited time allotted for after-trial motions shifts a disproportionate burden to the courts. No unreasonable demand is made of counsel who initially are responsible for raising and preserving trial error if the obligation also rests on them to make note of points later to be included in a motion for new trial. Precedent supports this long standing practice and no persuasive argument is made here to justify adopting a different course.

The judgment and sentence are affirmed.

All concur.