Robert F. ANDERSON et al., Respondents,

v.

CITY OF OLIVETTE et al., Appellants.

No. 58324.

Supreme Court of Missouri,
Division No. 1.

Jan. 13, 1975.

Samuel B. Murphy, Robert J. Koster, Cook, Murphy, Lance & Mayer, St. Louis, for respondents.

Carroll J. Donohue, Shulamith, Simon, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for appellants.

WELBORN, Commissioner.

Action to enjoin enforcement of ordinance of City of Olivette, regulating activities of real estate brokers doing business within Olivette. Trial court found ordinance invalid and city appealed.

On February 22, 1972, the City Council of the City of Olivette, a city of the third class, adopted Ordinance No. 998, establishing certain requirements applicable to real estate brokers doing business within the city. Appellants' brief has fairly summarized the ordinance as follows:

"The legislative findings incorporated in the ordinance are that 'the provision of real estate brokerage services must be provided to all prospective sellers, purchasers and renters of housing within the City of Olivette on a non-discriminatory basis' and that it is 'necessary to regulate real estate brokerage activities in order to insure that said activities do not foster discrimination and thereby damage the public health, welfare, safety and morals of the citizens and prospective citizens of the City of Olivette.'

"The requirements imposed on each broker doing business within Olivette, as set out in Section 2 of the Ordinance, are to:

"(a) Include a statement of non-discrimination on all of its listing contracts which are used or available for use in connection with real estate located in Olivette.

"(b) Prominently post a Fair Housing notice at each of its offices at which business in connection with real estate located in Olivette is transacted.

"(c) Indicate its fair housing policy on all brochures and pamphlets which are used or are available for use in connection with real estate located in Olivette.

"(d) Develop and implement non-discriminatory objective written procedures and standards to insure that all persons inquiring about available property and houses for sale or rent are made aware of all known listings available in the desired price range and type of home, regardless of location, and that each prospective customer shall, regardless of race, color, religion or national origin have the same opportunity to use the real estate broker's services and facilities to purchase or rent any listed dwelling. A copy of such written procedures and standards is to be filed with the City of Olivette.

"(e) Instruct all of its employees, salesmen and agents as to the broker's non-discriminatory policies and practices and as to the non-discriminatory policies and practices and as to the non-discriminatory procedures and standards. Each such employee is to sign and file with the broker a statement indicating that such employee has been apprised of such policies and practices. Such statements are to be made available for inspection by Olivette officials upon reasonable notice.

"(f) Maintain on a current basis records showing: the name and address (unless the person does not give such information when asked), race and date of inquiry of each person inquiring in person at any of the real estate broker's offices about property or houses for sale or rent within Olivette and the name of the broker's employee

or representative handling such inquiries; similar information as to every person shown any residential property in Olivette, and as to the buyer and seller of homes in Olivette sold by the broker. Such records are to be preserved for a period of three years and to be available to Olivette officials for inspection and copying at any reasonable time upon reasonable notice."

Ten real estate brokers who had handled transactions involving real estate located in Olivette, but who had no place of business within the city, brought suit to enjoin enforcement of the ordinance, contending it was invalid because the city lacked authority to enact such ordinance. The petition also alleged invalidity on numerous constitutional grounds. At the trial of the cause, two of the plaintiffs testified that they had received summons in proceedings charging violation of the ordinance. Evidence was introduced that Olivette had enacted another ordinance, prohibiting discrimination in the sale or rental of housing. The city also showed that the Real Estate Board of Metropolitan St. Louis, of which the two plaintiffs who testified were members, had adopted a Code of Fair Housing Practices with which members were pledged to comply. The code embodied practically all of the provisions of the ordinance, except for the records-keeping requirement. The city showed that such requirement was based upon a consent decree, entered by the United States District Court for the Eastern District of Missouri, Eastern Division, in the case of United States of America v. John H. Armbruster and Company, et al., No. 70 C 108(4). That case was an action under the Federal Fair Housing Act against realtors, members of the Real Estate Board of Metropolitan St. Louis.

The trial court held the ordinance invalid on the grounds that the city had no authority to enact Ordinance No. 998. It also found the ordinance invalid as attempting to control activities of real estate brokers outside of the City of Olivette. It also concluded that the ordinance might be subject to attack on constitutional due process grounds, although the court did not finally rule such issues. Because the first finding is decisive, the other bases of the trial court's decree are not reached.

The trial court's finding on the lack of authority was premised primarily upon the fact that § 94.110, RSMo 1969, V.A.M.S., authorizes a city of the third class to license real estate agents and the court concluded that the general grant of authority to such cities, found in §§ 77.260 and 77.-590, RSMo 1969, V.A.M.S., to enact ordinances "for the good government of the city, the preservation of peace and good order, the benefit of trade and commerce, and the health of the inhabitants thereof, * * *" did not authorize the regulation of real estate brokers, undertaken by the ordinance.

Appellants first attack the trial court's viewing this ordinance as one regulating a particular business. Appellants assert:

" * * * The Ordinance is not an exercise of authority to regulate a particular business. Rather, it is the implementation of the City's police power conferred by Sections 77.260 and 77.590, R.S.Mo. in carrying out the constitutional doctrine of prohibiting discrimination in the sale or rental of residential real estate. Accordingly it falls within the acknowledged category of authority of a municipality, as the exercise of a power which is essential to the purposes of a municipal corporation."

The best source for determination of the nature of this ordinance is the ordinance itself. The council in its legislative findings declared: "It is necessary to regulate real estate brokerage activities * * *." Appellants' jurisdictional statement opens with this sentence: "This is an action involving the validity of an ordinance of the City of the City of Olivette, regulating the activities of real estate brokers doing business within Olivette."

 Justification for the regulation would arise from the police power. The regulation would require a relationship to

the preservation of health, safety and welfare of the citizens of Olivette. Protection of the constitutional right of citizens to be free from racial discrimination is a proper function of the police power. Marshall v. Kansas City, 355 S.W.2d 877 (Mo. banc 1962). That fact makes this ordinance none the less a regulation of the real estate brokerage business as the ordinance itself declared. Therefore, the trial court properly considered the question before it as one of the authority of the City of Olivette to regulate real estate brokers.

Section 94.110, relied upon by the trial court, confers upon cities of the third class three areas of authority with respect to businesses and occupations in such cities. The first power granted is "to levy and collect a license tax" upon some 79 businesses and callings, including "real estate agents." The second grant of authority is "to levy and collect a license tax and regulate" some 86 businesses and classes of vehicles. The third grant of authority is "to levy and collect a license tax, regulate, restrain, prohibit and suppress" some 50 businesses and callings.

█ As the trial court noted, statutes dealing with cities of the first (§ 73.110), second (§ 75.110) and fourth (§ 94.270) classes include real estate agents among the callings which such cities are empowered to license and regulate. The absence of such provision with respect to third class cities and the terminology employed in § 94.110 precludes any finding of express authority in such cities to regulate real estate agents.

What is the effect to be given §§ 77.260 and 77.290, relied upon by appellants?

Section 77.260 provides:

"The mayor and council of each city governed by this chapter shall have the care, management and control of the city and its finances, and shall have power to enact and ordain any and all ordinances not repugnant to the constitution and laws of this state, and such as they shall deem expedient for the good government of the city, the preservation of peace and good order, the benefit of trade and commerce, and the health of the inhabitants thereof, and such other ordinances, rules and regulations as may be deemed necessary to carry such powers into effect, and to alter, modify or repeal the same."

Section 77.290 provides:

"The mayor shall, from time to time, communicate to the council such measures as may, in his opinion, tend to the improvement of the finances, the police, health, security, ornament, comfort and general prosperity of the city."

The trial court held that these provisions, accompanying specific powers to license, tax, or regulate, could not be construed as authority for exercise of the police power in connection with subject matters not covered by a specific grant of power. The trial court's conclusion was based primarily upon the case of Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70 (banc 1949). Tietjens involved a rent control ordinance adopted by the City of St. Louis. No state statute delegated such authority to the city and its charter did not expressly authorize such regulation. When the power of the city to enact the ordinance was questioned, it relied upon the general grant of power in its charter to regulate and license business and to do all things necessary and expedient to the health and welfare of its citizens. In holding that such provisions did not authorize the rent control legislation, the court acknowledged that such legislation was properly encompassed by the police power. The court concluded (222 S. W.2d 73 [8], [9, 10]):

"In its relations with cities the state retains control to a great extent over the governmental functions of a city. Exercise of the police power is a governmental function, the control of which remains in the state. A city has no inherent police

power. Its authority to exercise such power within a particular field must come from a specific delegation by the state or in certain cases from the express or fairly implied grant of powers of its charter. Kansas City v. J. I. Case Threshing Mach. Co., 337 Mo. 913, 87 S.W.2d 195; Ex parte Williams, 345 Mo. 1121, 139 S.W.2d 485.

"Since neither the state nor the city's charter has granted the city the express power to control rents, the issue is narrowed to the question whether such power is necessarily or fairly implied in or incident to the powers expressly granted or those essential and indispensable to the declared objects and purposes of the charter provisions. The answer to the question must be no. The fixing of rents, or for that matter of prices or rates for any commodity or service, except those specifically mentioned in the charter, may not be fairly implied or held to be incident to any power granted by the city's charter. *The general welfare clause of the charter may not be construed so as to enlarge the powers of a city further than is necessary to carry into effect the specific grants of power.* City of St. Louis v. King, 226 Mo. 334, 126 S. W. 495, 27 L.R.A.,N.S., 608, 136 Am.St. Rep. 643. *Thus it is clear the city had no authority to adopt the ordinance, and it is therefore invalid.*" (emphasis supplied)

Although the appellants have here attempted to distinguish other cases cited and relied upon by the trial court in its memorandum and by the respondents here, their brief and reply brief make no mention of the Tietjens decision.

In support of their position that §§ 77.-260 and 77.290 confer upon them a general police power, to be exercised without regard for the provisions of § 94.110, appellants cite Marshall v. Kansas City, supra, in which the court upheld a Kansas City ordinance forbidding racial discrimination in the operation of restaurants. Such specific grant of power was held to carry with it the authority to exercise the police power. 355 S.W.2d 882. The primary dis-

tinction between this case and Marshall is the absence of such specific authority to regulate the business here involved.

In ABC Liquidators, Inc. v. Kansas City, 322 S.W.2d 876 (Mo.1959), cited and relied upon by appellants, the court upheld a Kansas City ordinance prohibiting auction sales on Sunday. Such regulation was held to be a valid exercise of the police power by the city. The real question involved in that case appears to have been the propriety of the mode of exercise of the police power, not the existence of such power. The court did refer to the gneral grant of police power to Kansas City, found in § 82.300, RSMo 1969, V.A.M.S. However, no reference was made to the existence or lack of specific authority granted by the charter to regulate auctions.

Neither Komen v. City of St. Louis, 316 Mo. 9, 289 S.W. 838 (1926), nor City of St. Louis v. Green, 353 S.W.2d 606 (Mo. 1962), both of which are relied upon by appellants, involved the relationship between a general police power grant and a specific grant of authority with respect to the business regulated. Komen upheld an ordinance regulating the hours of bakeries on Sunday. Green upheld an ordinance requiring real estate salesmen posting "For Sale" signs on property to indicate on the sign the zoning classification. Both cases relied upon the authority granted the city by general terms of its charter to license and regulate all businesses operated in the city.

One other case cited and relied upon by appellants must be noted, State v. White, 263 S.W. 192 (Mo.1924). White was charged with violation of an ordinance of the City of Kirksville, a city of the third class, prohibiting the sale of intoxicating liquors. He was acquitted of the charge but was charged with subornation of perjury for having induced false testimony on his behalf at the trial on the original charge. Upon conviction of the perjury charge, White attacked the authority of

the city to enact its prohibition ordinance. He pointed to the fact that specific authority to legislate on such question had not been granted by the legislature to municipalities at the time of the adoption of the Kirksville ordinance, although the legislature had subsequently granted such authority specifically. The court held that such specific authority was not necessary for the enactment of such ordinance. The court pointed to § 8290, RSMo 1919, presently § 77.260, relied upon by appellants here. The court stated (263 S.W. 194):

"It was not necessary, therefore, to the validity of the ordinance of October 3, 1921, that express statutory authority therefor exist. It was clearly within the general welfare clause expressed in section 8290, in that it was deemed expedient for the good government of the city and the preservation of peace and good order. This is power ample for its enactment, and a specific reference thereto in the general law was not necessary."

In its memorandum, the trial court took note of State v. White and dismissed it as "a temporary aberration in doctrine." White does not appear to have been relied upon in this regard in any subsequent case. It does appear to be reasoned contrary to that followed in Tietjens, supra. There is no necessity, however, to here overrule White, inasmuch as again, the case does not involve the absence of specific authority and reliance upon the general grant. Here, there is a specific grant of authority and, in effect, reliance upon the general grant to enlarge such specific authority.

None of the cases relied upon by appellants dealt with the situation here presented. Resolution of the question is a matter of legislative construction. A municipal corporation such as appellant is a creature of the legislature, possessing only those powers expressly granted or those necessarily or fairly implied in or inciden-

tal to express grants, or those essential to the declared objects of the municipality. City of St. Louis v. Kaime, 180 Mo. 309, 79 S.W. 140, 143 (1904). Any reasonable doubt as to whether a power has been delegated to a municipality is resolved in favor of nondelegation. Tietjens v. City of St. Louis, supra. Insofar as third class cities are concerned, the legislature has gone to such detail in specifying the businesses and callings which may be the subject of municipal legislation. Furthermore, the legislature has conferred three separate areas of authority: 1. To license; 2. To license and regulate; 3. To license, regulate, restrain, prohibit and suppress. The power with respect to real estate agents or brokers is to license only. Such specific grant may not be expanded to authority to license and regulate by reference to the general police power statutes. To do so would ignore the legislative intent evidenced by the express language of § 94.-110, in establishing three categories of authority to be exercised by third class cities, and further by the fact that in other classes of cities the power granted, specifically with respect to real estate agents, is to license, tax and regulate. §§ 73.110, 75.110, 94.270. The logic of this distinction may be difficult to understand, but that does not call for the courts to rewrite the legislation here involved to fit an apparently more logical scheme.

In their reply brief, appellants assert that the authority to license includes the power to regulate, relying upon City of Lamar v. Adams, 90 Mo.App. 35 (1901). That case involved an insurance license fee charged by the City of Lamar under legislative charter authorization "to regulate and to license and to levy and collect a license tax." The question presented was whether or not such language authorized only a license tax as a regulatory measure, limited to the expense of such regulation or a tax for revenue purposes. The court found the tax to be of the latter nature, but found that the charter authority was

broad enough to include such exaction. The case is no authority on the proposition involved in this case.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.