CITY OF RAYTOWN, Missouri, Respondent,

v.

John C. DANFORTH, Attorney General, Missouri Department of Social Services, Kansas City Ambulance Association, Inc., Ralph L. Martin, Prosecuting Attorney, Mid-America Regional Council, Emergency Rescue, Inc., Appellants.

No. 59734.

Supreme Court of Missouri, En Banc.

Dec. 19, 1977.

Rehearing Denied Feb. 8, 1978.

---

Harvey M. Tettlebaum, John D. Ashcroft, Atty. Gen., Jefferson City, Billy S. Sparks, Kansas City, for appellants.

Joseph E. Stevens, Jr., Kansas City, for respondent.

RENDLEN, Judge.

Appeal from the trial court's judgment declaring that provisions of Missouri's ambulance licensing law, §§ 190.100 to 190.195, RSMo Supp.1975,[1] do not require that plaintiff City secure a license from the Missouri Division of Health prior to operation of an ambulance service. The judgment also enjoined the threatened enforcement of the

---

1. The statutory sections, 190.100 to 190.195, regulating "ambulances, ambulance personnel and emergency treatment," shall be referred to as the "Licensing Law" or the "Act".

licensing law as to plaintiff.[2] The cause was transferred from the Missouri Court of Appeals, Kansas City district prior to opinion, pursuant to civil rule 83.06.

During 1975 Raytown, a city of the fourth class, negotiated unsuccessfully with defendant Kansas City Ambulance Association, Inc., to obtain ambulance service for its residents. Resolving to provide its own community ambulance, Raytown in January of 1976 applied to the Missouri Division of Health for an ambulance license under the recently enacted Licensing Law. Because the City had not previously operated such a service and did not qualify under the "grandfather" provision implicit in the Act,[3] its application was processed in the same manner as others entering the field following the effective date of the Act. A hearing required by § 190.125.2(1) was conducted in which it was determined the public convenience and necessity did not "require the proposed ambulance service" and accordingly Raytown's license application was denied. Apparently unwilling to avail itself of the appeal afforded by § 190.170.7, the City purchased a vehicle and commenced operating an ambulance service in 1976, sans the required state license.

Not long thereafter Raytown was notified by the Attorney General and then by the Prosecuting Attorney of Jackson County that it was in violation of the Licensing Law. These notices prompted plaintiff's action in the circuit court, culminating in the judgment declaring the City was authorized to continue under the provisions of § 67.300, RSMo 1969, free from constraints of the Licensing Law and restraining defendants from their threatened enforcement actions.

Defendants allege the trial court erred: (1) in declaring plaintiff City had authority to operate an unlicensed ambulance service, and (2) by enjoining the threatened enforcement of the penalty provisions of the Act. We reverse.

Urging affirmance, plaintiff contends that because § 67.300, RSMo 1969,[4] autho-

2. Defendants so enjoined are the Attorney General of Missouri; the Jackson County Prosecuting Attorney; the Missouri Department of Social Services and its Director. Other defendants are the Mid-America Regional Council, Emergency Rescue, Inc. and the Kansas City Ambulance Association, Inc., a Missouri not-for-profit corporation organized for the purpose of providing ambulance service on a contract basis in the Kansas City area. By its order the court directed that defendants "are hereby preliminarily restrained and enjoined from taking any action which would require or which would be designed to require or have the effect of requiring plaintiff to secure a license from the State of Missouri to operate an ambulance service and from bringing any charges, either civil or criminal, against plaintiff or its officers, agents or employees charging plaintiff or any of its officers with a violation of Section 190.100 *et seq.*, R.S.Mo., until the further order of this Court.

This is a final and appealable order."

3. See our recent decision, *State ex rel. Safety Ambulance Service, Inc. v. Kinder*, 557 S.W.2d 242 (Mo.banc 1977), for a discussion of the implied "grandfather" provision which relieves those ambulance services in operation prior to July 1, 1974 (the effective date of the Act), from the requirements of a hearing and determination of the public convenience and necessity.

4. Section 67.300 (effective June, 1967) is as follows:

"1. Any county, city, town or village may provide a general ambulance service for the purpose of transporting sick or injured persons to a hospital, clinic, sanatorium or other place for treatment of the illness or injury, and for that purpose may (1) Acquire by gift or purchase one or more motor vehicles suitable for such purpose and may supply and equip the same with such materials and facilities as are necessary for emergency treatment, and may operate, maintain, repair and replace such vehicles, supplies and equipment; (2) Contract with one or more individuals, municipalities, counties, associations or other organizations for the operation, maintenance and repair of such vehicles and for the furnishing of emergency treatment; (3) Employ any combination of the methods authorized in subdivisions (1) and (2) of this section.

2. The municipality or county shall formulate rules and regulations for the use of the equipment and may fix a schedule of fees or charges to be paid by persons requesting the use of the facilities and provide for the collection thereof.

3. The municipality or county may purchase insurance indemnifying against liability of the county or city and the driver and attendants of the ambulance for the negligent operation of the ambulance or other equipment or supplies or in rendering services incidental to the furnishing of the ambulance service."

rizes municipal ambulance services, the Licensing Law should not be construed as a limitation of that authority. Section 67.300 is an enabling Act granting authority for activities not previously permitted cities of the fourth class, namely, operation of ambulance services; however the authority conferred may not be extended beyond the legislative intendment. "A municipal corporation such as [plaintiff] is a creature of the legislature, possessing only those powers expressly granted, or those necessarily or fairly implied in or incidental to express grants, or those essential to the declared objects of the municipality. Any reasonable doubt as to whether a power has been delegated to a municipality is resolved in favor of nondelegation." *Anderson v. City of Olivette*, 518 S.W.2d 34, 39 (Mo.1975).

■ Measuring the powers granted municipalities under § 67.300 against the terms of the Licensing Law, we have concluded the legislature did not intend that cities operating ambulance services may do so without regard to the hearing requirements of §§ 190.100 to 190.195. This is not to say that § 67.300 and the Licensing Law are in conflict, instead the latter provides regulations relative to the general grant of the former and the general authority under § 67.300 is qualified by the subsequent special legislation on the subject. Statutes relating to the same subject must be read together and if possible in harmony, and provisions of one having special application to a particular subject will be deemed a qualification to another statute general in its terms. *Flarsheim v. Twenty Five Thirty Two Broadway Corporation*, 432 S.W.2d 245 (Mo.1968); *Eagleton v. Murphy,* 348 Mo. 949, 156 S.W.2d 683 (1941); *State ex rel. McKittrick v. Carolene Products Co.,* 346 Mo. 1049, 144 S.W.2d 153 (banc 1940). Section 67.300 deals with the general grant of power to cities for the operation of ambulance services and subsection 2 permits formulation of rules for the *use* of equipment and the *fixing* of fees. However, the statute makes no provision for licensing, minimum equipment requirements, personnel qualifications, training requirements or related operational standards found in

§§ 190.100 to 190.195. Moreover, as §§ 190.100 to 190.195 were enacted almost seven years after § 67.300, the later statute prevails if inconsistencies appear between them, thus the chronology of the legislation reinforces defendant's contention that the City's authority to provide ambulance service has been made subject to the requirements of the Licensing Law. *State ex rel. McNary v. Stussie,* 518 S.W.2d 630, 635[2] (Mo.banc 1974); *City of Kirkwood v. Allen,* 399 S.W.2d 30, 34[1] (Mo.banc 1966).

■ Plaintiff, vigorously maintaining the Licensing Law has no application to municipal ambulance services and that the legislative policy allowing local control over ambulance services by municipalities was not undercut by the Act, points to 190.105.4 which states: "*The issuance of a license* under the provisions of sections 190.100 to 190.195 *shall· not be construed* so as to authorize any person, firm, corporation, or association to provide ambulance services or to operate any ambulances *without a franchise* in any county, *municipality* or political subdivision *which has enacted an ordinance making it unlawful to do so.*" (Emphasis added.) This, plaintiff argues, authorizes municipal prohibition of ambulance operations "within their limits by the entities referred to" and because cities have the power to withhold such a franchise it must perforce be exempt from the licensing requirement of the Act. We do not agree. More properly it should be said that the legislature intended a state ambulance license is required for all ambulances operating in the state, but the political subdivision in which the service is rendered may also require a local franchise for such operations. We see an analogy in the state motor vehicle license requirements vis-a-vis that of a city license for resident owners' automobiles. Though the city in the ambulance license field may require a franchise for those operating in its bounds, this does not authorize a municipality to franchise its own operation and thereby circumvent the state licensing requirement. Such would run contrary to the provisions of § 190.105.1 that no person shall be engaged in the ambulance business "unless he

holds a currently valid license" from the Division of Health, and would constitute municipal legislative action in conflict with the Act of the sort proscribed by § 190.105.5.[5]

Numerous provisions of the Act demonstrate a legislative intent that municipal ambulance operations are among those within the purview of the statute. The following are examples: Section 190.105 mandates that "no person" shall operate an ambulance service upon any public way of the State of Missouri, unless holding an ambulance license under the Act. Person is defined by § 190.100(10) as "any . . . organization of any kind, including any government agency *other than the United States or the State of Missouri.*" (Emphasis added.) In this context the term "governmental agency" appears intended to broadly include all governmental entities, for the legislature concluded the section by removing or excepting the United States and the State of Missouri from its terms. Neither cities, towns nor villages are so excepted and therefore are deemed within its purview.

Subsection 190.100(1), defines an ambulance as "any privately or *publicly owned* motor vehicle" (Emphasis added.) designed and equipped to be used for the transportation of patients "including dual purpose police patrol cars." The inclusion of "publicly owned" vehicles among those defined as ambulances, refers to those owned by any political subdivision of the state, demonstrating a legislative intent that any city owned and operated ambulance must be licensed under the Act. Similarly, "dual purpose police patrol cars" typically owned by cities or counties are numbered among vehicles considered ambulances for purposes of the Act and perceiving this relevancy the legislature in 1975 enacted § 190.095 exempting the transportation of the sick, injured or incapacitated by police officers in emergency situations while in the exercise of their duties, from the prohibitions of

§§ 190.100 to 190.195. The legislature, however, did not choose to exempt all "publicly owned motor vehicles" used as ambulances, but only dual purpose police cars in emergency situations.

Another example demonstrating the Act's application to municipalities appears in § 190.110.2 which requires an annual $20.00 license *fee* for operators, but excludes ambulances "owned or operated by a political subdivision of the state." This presupposes that cities (political subdivisions) may in certain instances offer ambulance service and are subject to the Act but they, in contrast to private operators, are relieved from payment of the *fee.* Again, if the legislature had intended the Act not to apply to municipalities the exception described in 190.110.2 would be unnecessary. Similarly § 190.170.6 requires that rates charged for ambulance services "be filed with the board of health and the reasonableness thereof determined by the board of health," but makes this requirement applicable only to "privately owned" ambulance services. The distinction thus drawn would, like those above, be superfluous if the Licensing Law were not otherwise intended to apply to municipalities.

Finally, sections 190.125.2 and 190.170.4 provide that an ambulance license shall issue upon a determination that the public convenience and necessity require the proposed service and prescribe a hearing for that purpose. From this we perceive the qualitative improvement of ambulance service emerging as a major purpose of the Act. If plaintiff's interpretation were accepted and the judgment not reversed, the thrust of the Licensing Law toward control of destructive competition and improvement of service could be effectively thwarted.

We hold §§ 190.100 to 190.195, RSMo Supp.1975 are applicable to cities, towns, villages and counties when engaging or seeking to engage in an ambulance service operation and the declaratory judgment

---

**5.** Section 190.105.5 states: "Sections 190.100 to 190.195 shall not preclude the adoption of any law, ordinance or regulation *not in conflict* with this statute by any county, municipality or political subdivision." (Emphasis added.)

will be reversed and the injunction ordered dissolved. Accordingly, we need not reach defendant's other allegations of error.

The judgment is reversed and the cause remanded so that judgment may be entered consistent with the views expressed herein.

HENLEY, FINCH, DONNELLY and SEILER, JJ., and STEWART, Special Judge, concur.

BARDGETT, J., concurs in part and dissents in part in separate opinion filed.

MORGAN, C. J., not sitting.

BARDGETT, Judge, concurring in part and dissenting in part.

I concur in the result reached in this case because I agree that ambulances operated by a municipality are, in the main, subject to the many provisions of the Missouri ambulance licensing law. I do not agree that a municipality which is otherwise authorized by law to operate a municipal ambulance service is subject to the convenience and necessity requirements of the act. Municipalities that operate power plants are not subject to a determination of convenience and necessity by the Public Service Commission or anyone else. And this is so even though the municipally-operated plant competes with a privately-owned utility.

In my opinion, the decision of the governing body of a municipality, which is legally authorized to operate an ambulance service, is final on that point. I agree that the regulatory provisions of the act with respect to equipment, inspection, etc., apply to municipalities because the state has a legitimate interest in the safety of the people transported in the equipment.

I do not believe the legislature intended to deprive the citizens of a municipality of not-for-profit ambulance service where those citizens, through their elected representatives, desire to subsidize the service with their local taxes, in order that a private ambulance service can make a profit. Furthermore, if a franchise from the city is necessary by reason of a city ordinance, then it is apparent that the city could pre-vent another from operating an ambulance service in the city and operate one of its own. I can think of no other instance where a municipality that has the statutory authority to do an act is nevertheless subject to a convenience and necessity decision by someone else and I don't believe it was intended in the instant case.

I concur in the result because, as indicated, I agree that the municipality is subject to other provisions of the law.