Dear Representative Muckler:
This is in response to your request for an official opinion of this office on the following question:
 "Can a Charter City self-insure its ambulance vehicles via the power granted Charter Cities under Article VI, Section 19, 19(a), and 22 without being in conflict with 190.120 RSMo. and 13 CSR 50-40.030?"
 Section 190.120, RSMo Supp. 1975, a part of the 1973 law providing for the state licensing of ambulance services and personnel, reads:
 "1. No ambulance license shall be issued under sections 190.100 to 190.195, nor shall such license be valid after issuance, nor shall any ambulance be operated in Missouri unless there is at all times in force and effect insurance coverage for each and every ambulance owned or operated by or for the applicant or licensee, providing for the payment of damages in an amount as prescribed by the board issued by an insurance company licensed to do business in the state of Missouri:
 (1) For injury to or death of individuals in accidents resulting from any cause for which the owner of said vehicle would be liable on account of liability imposed on him by law, regardless of whether the ambulance was being driven by the owner or his agent; and
 (2) For the loss of or damage to the property of another, including personal property, under like circumstances.
 "2. The insurance policy shall be submitted by all licensees required to provide such insurance under sections 190.100 to 190.195. The insurance policy shall be submitted to the license officer, in such form as he may specify, for his approval prior to the issuance of each ambulance license.
 "3. Every insurance policy required by the provisions of this section shall contain a provision for a continuing liability thereunder to the full amount thereof, notwithstanding any recovery thereon; that the liability of the insurer shall not be affected by the insolvency or the bankruptcy of the assured; and that until the policy is revoked the insurance company will not be relieved from liability on account of nonpayment of premium, failure to renew license at the end of the year, or any act or omission of the named assured. Such policy of insurance shall be further conditioned for the payment of any judgments up to the limits of said policy, recovered against any person other than the owner, his agent or employee, who may operate the same with the consent of the owner.
 "4. Every insurance policy required by the provisions of this section shall extend for the period to be covered by the license applied for and the insurer shall be obligated to give not less than thirty days' written notice to the license officer and to the insured before any cancellation or termination thereof earlier than its expiration date, and the cancellation or other termination of any such policy shall automatically revoke and terminate the licenses issued for the ambulances covered by such policy unless covered by another insurance policy in compliance with sections 190.100 to 190.195."
 13 CSR 50-40.030 provides:
 "Each licensed ambulance shall be insured for the sum of at least $100,000 for injury to or death of any one individual arising out of any one accident and the sum of at least $300,000 for injury to or death of more than one individual in any one accident and for the sum of at least $10,000 for damage to property arising from any one accident."
We understand that the City of St. Louis has by ordinance provided for the self-insurance of all municipally owned motor vehicles. The city's charter does not specifically address the subject of insurance for the city or its property. The city has been heretofore licensed by the State Division of Health to operate an ambulance service but on a self-insured basis.
Ambulances owned or operated by political subdivisions of the state are subject to the 1973 law and must be licensed thereunder. City of Raytown v. Danforth, 560 S.W.2d 846 (Mo.Banc 1977).
Section 190.120 plainly does not authorize licensed ambulance operators to self-insure their risk of liability. By comparison see Section 303.220, RSMo.
 "It would be a contortion of the term insurance to hold that its meaning as employed here is broad enough to include `self-insurance' which while commonly referred to in that fashion is actually the antithesis of insurance as that term is commonly used." Universal Underwriter Insurance v. Mariett Homes, Inc., 238 So.2d 730, 732 (Ala. 1970).
Accordingly, it must be determined whether the legislature can validly impose an obligation upon constitutional charter cities, particularly the City of St. Louis, to insure, rather than self-insure, the risk of liability associated with their licensed ambulance operation.
The Missouri Constitution provides in material part:
 ". . . Any city . . . may frame and adopt a charter for its own government.
* * *
 ". . . Any city which . . . has adopted a charter for its own government, shall have all powers which the general assembly . . . has authority to confer upon any city, provided such powers
are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. . . ." Art. VI, §§ 19, 19(a) (Emphasis added).
 ". . . The city of St. Louis . . . shall continue for city purposes with its present charter . . . and with the powers, organization, rights and privileges permitted by this Constitution or by law." Art. VI, § 31.
 ". . . No law shall be enacted creating or fixing the powers, duties or compensation of any municipal office or employment, for any city framing or adopting its own charter under this or any previous Constitution, . . ." Art. VI, § 22.
Although the City of St. Louis undoubtedly has the power to operate an ambulance service, we think its power to do so has been "limited . . . by statute", specifically Sections 190.100-190.190,RSMo Supp. 1975, and that included in the limitation is the requirement that each ambulance be insured, rather than self-insured, in the amount prescribed by state regulation. Furthermore, we do not believe that this state law requirement of ambulance insurance can be regarded as "creating or fixing the powers, duties or compensation of any municipal office or employment." It is comparable to a state law requiring municipal bodies to conduct meetings open to the public, or a state law requiring nondiscriminatory practices in municipal employment, both of which laws having been held valid under Art. VI, § 22. Cohen v.Poelker, 520 S.W.2d 50 (Mo. Banc 1975); City of St. Louis v.Missouri Commission on Human Rights, 517 S.W.2d 65 (Mo. 1974).
CONCLUSION
It is the opinion of this office that ambulances owned and operated by a constitutional charter city and licensed by the state under §§ 190.100-190.190, RSMo Supp. 1975, must be insured as required by § 190.120, RSMo Supp. 1975 and 13 CSR 50-40.030
and the city may not self-insure to meet this requirement.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Louren R. Wood.
Very truly yours,
 JOHN ASHCROFT Attorney General