Dear Commissioner Mallory:
This official opinion is issued in response to your request for a ruling on the following four questions:
 1. May a school district have a term of less than 180 days with less than 174 days of actual pupil attendance without jeopardizing its eligibility for state aid providing it has scheduled two-thirds as many make-up days as were lost the previous year due to inclement weather if all of the first eight days lost due to inclement weather are made up plus one-half of those missed in excess of eight?
 2. Does the term "inclement weather" as found in section 171.033, RSMo, 1978 include days when it is uncomfortably hot?
 3. May a school district make up days lost because of inclement weather by extending the regular school day by one-half hour in lieu of using the scheduled make-up days?
 4. It is permissible under provisions of section 160.041, RSMo, 1978 for a school district to operate its schools on a "snow schedule" by beginning daily sessions one hour later than usual and dismissing one hour earlier than usual thereby providing for a school day of four hours?
 I
Your first question is whether a school district which, in the previous year, has had less than the statutory minimum number of days in the school term and of actual pupil attendance resulting from inclement weather, can be eligible for state aid in the upcoming year if certain guarantees are built into the upcoming year's calendar. For the reasons stated below, it is the opinion of this office that such a district, providing it meets certain statutory requirements, can remain eligible for state aid.
The school term is required to be least 180 days by § 163.021, RSMo 1978. Section 171.031, RSMo 1978, requires a minimum of 174 days of actual pupil attendance. Due to inclement weather, many school districts in the state did not hold school for the minimum number of days in the 1978-79 school year. Thus, they would be ineligible to receive state aid for the 1979-80 school year unless
they meet the requirements of § 171.033 of Senate Bill No. 954 of the 79th General Assembly.
Such section provides as follows:
 Beginning with the 1978-79 school year, no school district shall be exempt from any requirement to make up any days of school lost or canceled due to inclement weather, unless that school district schedules at least two-thirds as many make-up days for a school year as were lost in the previous school year, which days shall be in addition to the school calendar days required for a school term by Section 171.031. A school district shall be required to make up all of the first eight days of school lost or canceled due to inclement weather and half the number of days lost or canceled in excess of eight days.
The language of this section provides an exemption from the statutory minimum day requirements for school districts which have built certain guarantees into their upcoming year's calendar. Thus, a district, which did not have the requisite number of daysdue to inclement weather in the year just past, would nevertheless be eligible for state aid in the upcoming year if its calendar for the upcoming year reflects that it has scheduled at least two-thirds as many make-up days as were lost in the previous year due to inclement weather. A school district must make up all of the first eight days plus one-half of the days missed in excess of eight in order to remain qualified.
Giving the words of this statute their plain and ordinary meaning, it is apparent that the exemption was intended to apply in the situation presented by your first question. Furthermore, the title of Senate Bill No. 954 reveals exactly such an intent. The bill is titled as follows:
 AN ACT to prevent the loss of state aid for school districts operating schools for less than the statutory minimum number of school days, with an emergency clause.
 II
Your second question is whether the phrase "inclement weather," as found in § 171.033, RSMo 1978, includes extraordinarily hot days. The answer, in our opinion, is no.
The primary rule of statutory construction requires us to ascertain the intent of the legislature from the language used and to consider words in their plain and ordinary meanings. State v.Kraus, 530 S.W.2d 684 (Mo. banc 1975), and State ex rel. Dravo Corporationv. Spradling, 515 S.W.2d 512 (Mo. 1974). The word "inclement" is ordinarily understood to mean stormy or violent weather, in particular, winter snow storms and ice storms. This coincides with the first definition of the term given in Webster's New World Dictionary,2nd College Edition, 1976. This definition would not include hot weather.
That the legislature contemplated such a definition of the term "inclement weather" is apparent from the language of the emergency clause contained in Senate Bill No. 954 which enacted the current § 171.033, RSMo 1978. The emergency clause (Section A) reads as follows:
 Because of the large number of days lost by schools this winter due to the unusually severe winter and because of the necessity for students and teachers in affected schools to begin summer school at times before the school year would end if the district was forced to make up the lost days, this act is deemed necessary for the immediate preservation of the public health, welfare, peace and safety, and is hereby declared to be an emergency act within the meaning of the constitution, and this act shall be in full force and effect upon its passage and approval. (Emphasis added)
From this it is apparent that the legislature did not intend to provide an exemption for certain days on which school was not held due to unusually hot weather.
 III
Your third question concerns the use of the one-half hour extension of the school day provided in § 160.041.2, RSMo 1978, in conjunction with, or instead of, the scheduled make-up days provided for in § 171.033, RSMo 1978, discussed above. Each of these sections provides a method by which time lost due to inclement weather can be made up. Thus, both sections deal with the same subject, and, are in pari materia.
Statutes which are in pari materia must be read together and, if possible, construed harmoniously to give effect to both. SeeCity of Raytown v. Danforth, 560 S.W.2d 846 (Mo. banc 1977), andState v. Kraus, supra. This principle applies even when the sections involved are in separate chapters.
In this case, it is simple to construe the two statutes in harmony with one another, and to give effect to both. That is, a school district may make up days lost to inclement weather by extending the school days by one-half hour or by making up entire days at the end of the year, or a combination of the two. In no way are these two sections inconsistent with each other. They simply provide the school board with a choice as to how the required number of days in the school year will be provided.
 IV
Your fourth question concerns the legality of a "snow schedule" in which a school would begin classes one hour later than normal and dismiss classes one hour earlier than usual, providing for a school day of four hours. We understand your question to be concerned with an advance scheduling of four hour days for a period of time delineated in advance. It is the opinion of this office that such procedure is not within a fair interpretation of the statutory scheme provided by the legislature.
Section 160.041.1, RSMo 1978, provides in part:
 [I]f any school is dismissed because of inclement weather after school has been in session for four or more hours that day shall count as a full day and if school has been in session for two hours or more and less than four hours that session shall be counted as one-half day. . . .
If, in the judgment of school officials, it is necessary to dismiss school earlier than the scheduled dismissal time because of inclement weather, § 160.041, RSMo 1978, provides some credit for the part of the day completed. This section is not intended to allow a school to begin later and end earlier on a regular basis as a part of a "snow schedule." We note that there is no statutory requirement that schools begin or end their regular school day at any particular time.
The entire scheme of statutory minimums for the school term, average daily attendance, and the number of hours in a school day (which is contained in § 160.041, RSMo 1978) is a guarantee to the children of this state and their parents that a minimum number of hours in a classroom under the guidance of trained teachers will be provided. It is our opinion that a "snow schedule" is not within the intention of the legislature in providing this guarantee.
CONCLUSION
Based upon the foregoing, it is our conclusion that:
1. A school district which had a term of less than 180 days and less than 174 days of actual pupil attendance may remain eligible for state aid providing it has scheduled two-thirds as many make-up days as were lost the previous year due to inclement weather if it makes up all of the first eight days missed plus one-half of the days missed in excess of eight.
2. The term "inclement weather," as found in § 171.033, RSMo 1978, does not include uncomfortably hot days.
3. A school district may make up days lost because of inclement weather by extending the school day by one-half hour as provided by § 160.041.2, RSMo 1978, in lieu of the scheduled makeup days.
4. Under § 160.041, RSMo 1978, a school district may not operate its schools on a "snow schedule" by beginning daily sessions one hour later than usual and dismissing one hour earlier than usual for a period of time delineated in advance.
The foregoing opinion, which I hereby approve, was prepared by my assistant, J. Kent Lowry.
Very truly yours,
 JOHN ASHCROFT Attorney General