Dear Representative Martinette:
This letter is in response to your question asking:
 Whether a ballot requesting the voters to authorize a transportation sales tax, pursuant to RSMo 94.705 (Cum. Supp. 1984), may include in the proposition authorizing the tax additional language which mandates the specific uses of revenues from the tax by requiring that 70% of the tax revenues be used for capital improvements, and that 30% of the tax revenues be used for maintenance, with detailed definitions of both categories; and, if the same proposition may not address both the authority to tax and the mandated allocation of revenues, whether a separate proposition on the same ballot may be used to allow the voters to mandate the specific uses of the tax revenues.
Your question concerns the City of Grandview, Missouri, a fourth class city.
Section 94.705.1, RSMo Supp. 1984, states:
 1. Any city may by a majority vote of its governing body impose a sales tax for transportation purposes enumerated in sections 94.700 to 94.755, but no such ordinance shall become effective unless the council or other governing body submits to the voters of the city, at a city or state general, primary, or special election, a proposal to authorize the council or other governing body of the city to impose such a sales tax; except that no vote shall be required in any city that imposed and collected such tax under sections 94.600 to 94.655, before January 5, 1984. The ballot of the submission shall contain, but is not limited to, the following language:
 Shall the city of ____________ impose a (city's name) sales tax of ______________ for transportation (insert amount) purposes?
 Yes
 No
 If you are in favor of the question, place an "X" in the box opposite "Yes". If you are opposed to the question, place an "X" in the box opposite "No".
 If a majority of the votes cast on the proposal by the qualified voters voting thereon are in favor of the proposal, then the ordinance and any amendments thereto shall be in effect. If a majority of the votes cast by the qualified voters voting are opposed to the proposal, then the council or other governing body of the city shall have no power to impose the tax herein authorized unless and until the council or other governing body of the city submits another proposal to authorize the council or other governing body of the city to impose the tax and such proposal is approved by a majority of the qualified voters voting thereon.
(Emphasis added.)
Section 94.700(9), RSMo Supp. 1984, defines the phrase "transportation purposes" as follows:
 (9) "Transportation purposes" shall mean financial support of a "public mass transportation system"; the construction, reconstruction, repair and maintenance of streets, roads and bridges within a municipality; the construction, reconstruction, repair and maintenance of airports owned and operated by municipalities; the acquisition of lands and rights-of-way for streets, roads, bridges and airports; and planning and feasibility studies for streets, roads, bridges, and airports. "Bridges" shall include bridges connecting a municipality with another municipality either within or without the state, with an unincorporated area of the state, or with another state or an unincorporated area thereof.
(Emphasis in original.)
Generally, statutory class cities are creatures of the General Assembly, possessing only those powers expressly granted to them by statute, those powers necessarily or fairly implied in or incidental to their express powers, and those powers essential to the declared objects of the municipality. Any reasonable doubt as to whether a power has been delegated to such a municipality is resolved in favor of nondelegation.Anderson v. City of Olivette, 518 S.W.2d 34, 39 (Mo. 1975). Your question asks if the voters can dedicate or earmark fixed percentages of transportation sales tax moneys for specific purposes. We are unable to find any specific provision of the statutes expressly granting fourth class cities this power.
It might be argued that the language in Section 94.705.1, RSMo Supp. 1984, providing that the ballot submitted to voters is not limited to the language specified in the statute, impliedly authorizes the dedication or earmarking of funds through the ballot. Although this is a possible reading of the statute, we caution against it for the following reasons.
First, under the Dillon rule, enunciated in the Anderson
case, any reasonable doubt as to whether a power has been delegated to a statutory class municipality is resolved in favor of nondelegation. As there is a reasonable doubt as to whether the General Assembly has authorized statutory class municipalities to earmark or dedicate transportation sales tax monies through the ballot, the Dillon rule requires a finding that no such power exists.
Second, a ballot submitting questions on the authority to tax and mandating a particular allocation of the tax monies thus raised may constitute doubleness in a submission to the voters. Doubleness in submissions at elections is regarded as a species of legal fraud because it may compel the voter, in order to get what he most earnestly wants, to vote for something he does not want. Hart v. Board of Education ofNevada School Dist., 299 Mo. 36, 39-40, 252 S.W. 441, 442
(banc 1923). In this instance it could be argued that the authorization of the transportation sales tax is a separate and distinct proposition from the disposition or allocation of the funds. A legal challenge could be mounted on the doubleness theory. But see Payne v. Kirkpatrick, 685 S.W.2d 891,905 (Mo.App., W.D. 1985) (holding that the dedication or earmarking of pari-mutuel wagering tax and license fee monies was a matter properly connected to the major subject of the pari-mutuel wagering amendment).
Third, it is established that a municipality may not surrender, transfer, contract away, or delegate governmental powers or duties of officers when such are assigned to an officer by charter or statute. Pearson v. City ofWashington, 439 S.W.2d 756, 760 (Mo. 1969). Section 79.110, RSMo 1978, provides that, "The mayor and board of aldermen of each city governed by this chapter shall have the care, management and control of the city and its finances, . . . ." Dedication or earmarking of funds through the ballot would strip future governmental officers of legislative control over these funds. Absent express statutory provisions authorizing the earmarking of funds, we believe that such earmarking would constitute a surrender or delegation of future legislative control over the transportation sales tax monies to the voters. This practice is questionable.
Weighing the various arguments pro and con, absent express statutory authority authorizing the earmarking of transportation sales tax monies through the ballot, we advise against the inclusion of additional language earmarking transportation sales tax moneys for specific uses in a ballot proposition authorizing the imposition of a transportation tax.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General