# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 99-2238

_____

| | | |
|---|---|---|
| Juanita Embry; Richard Delamater, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Bob Lewis, Chief of Police; | * | Appeal from the United States |
| Frederick C. Boland, Principal; Dan | * | District Court for the |
| Lowry, Dr., Superintendent, | * | Western District of Missouri. |
| | * | |
| Appellees, | * | |
| | * | |
| Attorney General of Missouri, | * | |
| | * | |
| Amicus on Behalf | * | |
| of Appellants. | * | |

_____

Submitted: January 12, 2000
Filed: June 8, 2000

_____

Before HANSEN, BRIGHT, and FAGG, Circuit Judges.

_____

HANSEN, Circuit Judge.

Juanita Embry and Richard Delamater appeal the district court's[1]order granting summary judgment in favor of Bob Lewis, Frederick Boland, and Dan Lowry in this 42 U.S.C. § 1983 action. We affirm.

## I.

Embry and Delamater were on the grounds of Adams Middle School (the school) in Trenton, Grundy County, Missouri, on November 4, 1997, collecting signatures on an initiative petition drive. A special election for state representative was being held that day, and the school was designated as a polling place.[2] Embry and Delamater were being paid for each signature collected. Accordingly, they chose to locate at the school because it was identified as having a high voter turnout and a logical place to seek signers for their petition. Delamater set up his table and chair on the grass of the school's west property near but not upon the public sidewalk. This location was more than 25 feet away from the school's polling entrance. Embry left Delamater at the school and went to North Central Missouri Community College to collect signatures.

Around 8:00 a.m., the school principal, Boland, approached Delamater and asked him if he had permission to be on the school property. Delamater indicated that he lacked permission. Delamater stated, however, that he thought he could petition at the school because it was a voting place. Boland then contacted the school

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

[2]The initiative petition drive sought to put a measure on a later ballot allowing local governments to restrict highway billboards. The billboard petition was not related to any issue on the November 4, 1997, ballot, and Embry and Delamater were not electioneering or campaigning for or against any issue or candidate being voted upon in the November 4, 1997, election.

superintendent, Lowry. Boland claims that Lowry told him that Boland as the principal had the authority to make the final decision regarding Delamater's presence on the school property. Following his conversation with Lowry, Boland asked Delamater to leave the property, and Delamater complied.

Embry returned to the school around noon and was told that Delamater had gone to the courthouse, which also served as a polling place. At the courthouse, Delamater explained to Embry that Boland had asked him to leave the school property. Embry returned to the school at approximately 1:00 p.m. and began to collect petition signatures. She set up her table on the school property near but not upon the sidewalk. Around 3:00 p.m., Boland approached Embry and told her to leave the school property. At about the same time, Delamater returned to the school. Embry explained to Boland that she had a right to collect signatures at the school because it was a polling place provided she remained at least 25 feet away from the polling entrance. She told Boland that she would not leave the school property. Boland called Lewis, the Police Chief of Trenton, Missouri. After Lewis arrived, he informed Embry that he would arrest her if she did not leave the school property. Embry refused to leave, and Lewis arrested her. Delamater left on his own accord. Embry was released later that day without any charges being filed against her.

Embry and Delamater filed a 42 U.S.C. § 1983 complaint against Boland, Lowry, and Lewis alleging a violation of their First Amendment rights. Embry also filed a state law claim for false imprisonment against Lewis. The district court granted summary judgment to Boland, Lowry, and Lewis on the § 1983 claim and dismissed without prejudice Embry's state law claim for false imprisonment. Embry and Delamater appeal the grant of summary judgment.

II.

3

Embry and Delamater claim that petition circulating is core political speech and, as such, is protected by the First Amendment to the United States Constitution. Stated as a general proposition of constitutional law, we agree. On appeal, Embry and Delamater argue that the district court erred in its public forum analysis. The district court concluded that the school, as a whole, was a nonpublic forum. Embry and Delamater contend that the state of Missouri, through Mo. Ann. Stat. § 115.117 (West 1997), designated the school property, in particular the limited area on which they located, as a limited public forum for the purpose of voting and electioneering activities on that particular day.[3] In addition, they argue that electioneering activities were allowed at the school on that day, pursuant to Mo. Ann. Stat. § 115.637 (West 1997), provided they remained at least 25 feet away from the polling entrance. Embry and Delamater explain that, under a designated public forum analysis, their exclusion can withstand scrutiny only if it was necessary to serve a compelling state interest and was narrowly drawn to achieve that end. In addition, they contend that a reasonable jury could find their exclusion was content-based because Boland read the petition before asking Delamater to leave the property, they assert that Boland did not ask an electioneer who was distributing Republican brochures to leave the property, and Boland admitted he had never before called the police to have a person removed from the property on an election day.

We review the grant of summary judgment de novo. Coplin v. Fairfield Pub. Access Television Comm., 111 F.3d 1395, 1401 (8th Cir. 1997). In conducting our

---

[3]Section 115.117(1) states:

The election authority may designate tax-supported public buildings or buildings owned by any political subdivision or special district to be used as polling places for any election, and no official in charge or control of any such public building shall refuse to permit the use of the building for election purposes. The election authority shall have the right to choose the location of the polling place within such buildings.

review, we evaluate the record in the light most favorable to the nonmoving party. Id. Summary judgment is appropriate only when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(c)).

Pursuant to § 115.117, the election authority may designate tax-supported public buildings as polling places for any election. The election authority has the right to choose the location of the polling place within the building. See § 115.117(1). In addition, the state of Missouri has restricted the types of activities that may occur near a polling place. Section 115.637 of the Missouri Revised Statutes identifies the types of activities that are class four election misdemeanor offenses. Included in the list of offenses are:

> Exit polling, surveying, sampling, electioneering, distributing election literature, posting signs or placing vehicles bearing signs with respect to any candidate or question to be voted on at an election on election day inside the building in which a polling place is located or within twenty-five feet of the building's outer door closest to the polling place . . . .

Mo. Ann. Stat. § 115.637(18).

The Adams Middle School building was designated as a polling place under Missouri law, and the voting booths were located on the first floor of the school building near the west entrance. Only a portion of the school property was a designated public forum on November 4, 1997, for the limited purpose of voting, in accordance with § 115.117. Specifically, this area included the parking lot, the walkway leading to the west entrance, the hallway inside the school leading to the voting booths, and the area containing the voting booths. All other areas of the school property, however, remained a nonpublic forum. Neither Embry nor Delamater were located on those portions of the school property which had been appropriated for election purposes.

Public schools are not deemed public forums unless the "school authorities have 'by policy or by practice' opened those facilities 'for indiscriminate use by the general public.'" Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 267 (1988) (quoting Perry Educ. Ass'n. v. Perry Local Educators' Ass'n., 460 U.S. 37, 47 (1983)). Government ownership of the school property does not automatically open that property to the public. See United States v. Kokinda, 497 U.S. 720, 725 (1990). There is no evidence in the record that the school officials opened up the school for "indiscriminate use by the general public." In fact, it was the state of Missouri, not the school officials, that opened a portion of the school to registered voters for the limited purpose of voting. This action by the state of Missouri, pursuant to § 115.117, did not turn the rest of the school property into a designated public forum.

Embry and Delamater suggest that § 115.637(18) authorizes petitioning on school property during an election, provided the petitioning occurs more than 25 feet away from the entrance to the polling place. At oral argument, their counsel cited Anderson v. City of Olivette, 518 S.W.2d 34 (Mo. 1975), for the proposition that "since the mid-1970s it has been Missouri law that local jurisdictions may not prohibit election activities outside the 25 foot line." Contrary to counsel's representation, Olivette does not address the issue of whether Missouri law authorizes election activities on school property outside the 25 foot line. Rather, Olivette addresses the city of Olivette's authority to enact an ordinance regulating the activities of real estate brokers within the city. See Olivette, 518 S.W.2d at 35. The case is not on point.

We have found no Missouri case supporting Embry's and Delamater's broad reading of § 115.637(18). Although Missouri law makes it an offense to electioneer within 25 feet of a polling place's outer door, it does not automatically follow that electioneering is allowed anywhere outside the 25 foot line. Despite the designation of the school building as a polling place on November 4, 1997, the balance of the school property remained a nonpublic forum, except for those portions of the school that were necessarily opened for voting purposes. The grassy area on the school

6

property where Embry and Delamater set up a table for petitioning was not open to the public regardless of the number of feet it was located from the west entrance. We also express some doubt that the petition signature soliciting conducted by Embry and Delamater constitutes any of the individual election activities prohibited under the statute, but we do not need to decide that precise issue.

Access to a nonpublic forum can be restricted, provided the restrictions are reasonable and are not an effort to suppress opposing viewpoints. See Cornelius v. NAACP Legal Defense & Educ. Fund, 473 U.S. 788, 800 (1985). The decision to exclude Embry and Delamater from the school property was reasonable because school officials have broad discretion in restricting visitors on school property to protect the safety and welfare of the school children. See Hall v. Board of Sch. Comm'rs of Mobile County, Alabama, 681 F.2d 965, 969 (5th Cir. Unit B 1982). Adams Middle School's policy of requiring visitors to receive permission from the school before using the school property is a reasonable response to the school's concerns regarding safety and disruption. The exclusion of Embry and Delamater, who made no effort to seek or receive permission to use the school property, was reasonable.

In addition, the record does not support Embry's and Delamater's contention that their exclusion was content-based. The fact that Boland read the petition before asking Delamater to leave the property does not, by itself, indicate that Boland excluded Delamater based upon the content of the petition. Additionally, Boland's deposition testimony that he had never before called the police to remove a person from the school property on an election day does not suggest that Boland's exclusion of Embry and Delamater was content-based because there is no indication in the deposition testimony that Boland ever was aware of any other people on the school property on an election day who were not there simply for the purpose of voting. Moreover, there is no evidence in the record that Boland was aware of a man distributing Republican literature on the school property for a period of twenty or thirty minutes early in the afternoon on November 4, 1997. Mere speculation or conjecture is not enough to

7

withstand a motion for summary judgment.  See Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

III.

Accordingly, we affirm the district court's order granting Boland, Lowry, and Lewis summary judgment on the § 1983 claim and conclude there was no abuse of discretion in dismissing without prejudice the state law false imprisonment claim once the federal claim had been dismissed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT